RAFAEL PICÓ, SANTIAGO IGLESIAS, JR., y S. L. DESCARTES, en su carácter de miembros y constituyendo la Junta de Planificación, Urbanización y Zonificación de Puerto Rico, peticionarios, *v*. CORTE DE DISTRITO DE SAN JUAN, HON. LUIS TIRADO GÉIGEL, JUEZ SUSTITUTO, demandada; J. VALLDE-JULI RODRÍGUEZ, Interventor.

Núm. 36.—*Sometido:* Marzo 4, 1946. *Resuelto:* Marzo 29, 1946.

*Ciro Malatrasi, Jr., Rafael R. Fuertes* y *Rafael Rodríguez Lebrón,* abogados de los peticionarios; *Brown, Newsom y Córdova,* abogados del interventor, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Los peticionarios, quienes constituyen la Junta de Planificación, Urbanización y Zonificación de Puerto Rico, solicitan se anule una orden dictada por el juez recurrido en el caso número R–7155 de Juan Valldejuli Rodríguez v. la Junta de Planificación de P. R., sobre nulidad de actuaciones, fijación de fianza y otros extremos, a virtud de la cual se fijó una fianza de $25,000 a favor de El Pueblo de Puerto Rico para garantizar la terminación de cierta urbanización que realiza el demandante y se autorizó al demandante a vender e inscribir los solares del 1 al 366 del Plano de Inscripción, ordenándose al Registrador de la Propiedad de San Juan a inscribir dicho plano excepto las áreas libres no urbanizadas las cuales no deberán ser objeto de venta ni de inscripción. Los hechos, brevemente expuestos, son los siguientes:

Juan Valldejuli Rodríguez radicó el 21 de noviembre de 1945 una demanda en la Corte de Distrito de San Juan contra la Junta de Planificación, Urbanización y Zonificación de Puerto Rico, a la cual nos referiremos en adelante como la Junta, en la que alegó que es dueño de una finca de 75 cuerdas radicada en Río Piedras, que con el fin de urbanizarla hizo preparar un proyecto el que sometió a la Junta, la cual lo alteró, preparando el demandante nuevos planos de construcción los cuales fueron aprobados por la Junta el 24 de agosto de 1945 autorizando la obra tan pronto el demandante obtuviera la aprobación del Servicio Insular de Acueductos y Alcantarillado, del Departamento de Sanidad y de la Autoridad de Fuentes Fluviales y que estas agencias insulares aprobaron dichos planos; que el demandante obtuvo dinero a préstamo para empezar la obra y la contrató con una firma de ingenieros por $241,467.36 habiéndose comenzado la obra en 20 de septiembre de 1945 y para terminarse en 240 días; que debido a la magnitud de la obra el demandante se vió en la necesidad de vender solares de la finca para alle-

gar fondos para dar frente a sus obligaciones y solicitó de la Junta la aprobación de un plano de inscripción y la fijación de una fianza para garantizar el cumplimiento de la obra según el plano de construcción ya aprobado por la Junta; que la Junta celebró una vista el 22 de octubre de 1945 y el 2 de noviembre dictó resolución en la que dispuso (a) que el demandante tenía que prestar una fianza por la suma de $261,467.36 o sean unos $20,000 más que el montante del contrato con la firma de ingenieros, (b) que tenía que traspasar y ceder gratuitamente a El Pueblo de Puerto Rico 37,372.29 metros cuadrados de terreno de la finca *integrados* por las áreas no urbanizadas, a pesar de que ya El Pueblo de Puerto Rico había tomado más de doce cuerdas o sea unos 48,000 metros cuadrados para vías públicas como la variante Río Piedras-La Muda y sin considerar que del terreno restante se han dedicado a calles más del 25 por ciento; (c) que el demandante tenía que arreglar ciertas disputas con determinados dueños de solares vendidos, problemas éstos que no son de la incumbencia de la Junta y sobre los cuales no tiene jurisdicción; que tal resolución es nula e ilegal (1) porque la fianza exigida es excesiva, injusta e irrazonable; (2) que las tres condiciones son extrañas al único asunto sometido a la Junta o sea la fijación de fianza y (3) porque intenta privar al demandante de su propiedad para uso público sin la debida compensación. El demandante solicitó de la Corte que se fijara una fianza razonable, que decretara la nulidad del artículo 37 del Reglamento de la Junta en cuanto fija un mínimum para la separación y dedicación para fines públicos de terrenos en propiedades urbanizadas dejando a la Junta fijar el máximum que desee privando así al ciudadano de su propiedad sin la debida compensación, decretando la nulidad de la resolución de la Junta de noviembre 2 de 1945.

Con la demanda el demandante radicó una moción solicitando se fijara por la corte una fianza de ejecución provisional y autorizando la inscripción en el Registro de la Propie-

dad de San Juan del plano de inscripción a los fines de proceder a la venta de solares de la urbanización.

El 28 de noviembre de 1945 la corte inferior dictó la orden a que hacemos referencia en el primer párrafo de esta opinión y los peticionarios, dos meses después, o sea el 28 de enero de 1946 radicaron ante esta corte una solicitud, bajo la Ley núm. 32 de 1943 (pág. 85), alegando que la orden dictada es nula (1) porque la corte inferior no tenía jurisdicción para dictarla de acuerdo con el artículo 26, párrafo tercero, de la Ley núm. 213 de 1942 ((1) pág. 1107) enmendado por la Ley núm. 155 de 1943 (pág. 489); (2) porque no tenía jurisdicción para dictar dicha orden *ex parte* de acuerdo con la Regla 15 de las Reglas de Enjuiciamiento Civil; (3) que aun teniendo jurisdicción procedió indebidamente o cometió abuso de discreción al dictarla sin haber citado a la Junta para oírla y (4) que la demanda ni la moción exponen hechos para constituir una causa de acción que justificara a la corte inferior a expedir la orden que tiene el efecto de un *injunction* mandatorio dirigido al Registrador de la Propiedad.

Expedimos el auto solicitado y suspendimos el efecto de la orden recurrida durante la tramitación del presente recurso. Oímos a las partes el 4 de marzo y les concedimos término adicional para radicar alegatos escritos, lo que han hecho.

El interventor, demandante en la corte inferior, sostiene que debemos anular el auto expedido (1) porque la Junta no solicitó de la corte inferior la reconsideración de su orden y no le ha ofrecido una oportunidad para considerar y resolver las contenciones que ahora presenta ante esta Corte y cita los casos de *Madera* v. *Campillo, Juez*, 30 D.P.R. 163; *National City Bank of New York* v. *Corte*, 45 D.P.R. 777, y *Las Monjas Corp.* v. *Corte*, 40 D.P.R. 294; (2) porque la corte inferior tenía jurisdicción para conocer del caso principal y para dictar la orden recurrida y (3) porque teniendo jurisdicción no abusó de su discreción al dictarla.

Consideraremos en primer término la cuestión jurisdiccional.

 Sostiene la Junta que de acuerdo con el último párrafo del artículo 26 de la Ley núm. 213 de 1942, la única corte en Puerto Rico con jurisdicción para revisar una decisión de la Junta es esta Corte Suprema. Dicho artículo, en su párrafo tercero, dispone:

"Cualquier parte interesada en la aprobación, denegación y desaprobación de un plano de lotificación, o en la expedición o denegación de un permiso de construcción, sanitario, o de usos de edificios o terrenos, contra la cual una petición de revisión haya sido presentada y sobre la misma haya rendido opinión la Junta de Planificación, Urbanización y Zonificación de Puerto Rico o la Junta de Apelaciones de Planificación, Urbanización y Zonificación, según sea el caso, podrá presentar, dentro del término de quince (15) días con posterioridad a la notificación de la misma, copias certificadas de cualesquiera tales decisiones o acciones para su revisión ante. la Corte Suprema de Puerto Rico; *Disponiéndose,* que dicha revisión ante la Corte Suprema podrá concederse solamente sobre cuestiones de derecho."

Arguye la Junta que la Corte inferior "en efecto revisó la actuación de la Junta al disponer en su orden de noviembre 28 de 1945 la fijación de fianza en una cuantía menor de la señalada por dicha Junta así como al ordenar la inscripción del plano y autorizar la venta e inscripción de solares, cosa que la Junta demandada había denegado y condicionado al cumplimiento de ciertos requisitos."

Por su parte el interventor sostiene que en dicha resolución la Junta no aprobó ni desaprobó el plano de lotificación pues la Junta ya había aprobado dicho plano por resolución de agosto 24 de 1945 al aprobar los planos de construcción, que constituye, según el artículo 43 del Reglamento de la Junta, "la aceptación oficial de que el proyecto está acorde con este Reglamento"; que lo que tenía la Junta ante sí era una solicitud para fijar fianza garantizando la terminación de la urbanización a los fines de aprobar los planos de inscripción y permitir la venta de solares, y que en la resolu-

ción de dicha solicitud la Junta incorporó la condición de que el demandante tiene que transferir gratuitamente a El Pueblo de Puerto Rico las áreas libres de la urbanización, condición ésta que no se incorporó en la resolución aprobando los Planos de Urbanización; y sostiene, por último, que el párrafo tercero del artículo 26, supra, ''claramente no concede un recurso de revisión ante esta Corte Suprema de una resolución de la Junta dictada a virtud del artículo 9 del Reglamento sobre fianza de ejecución en relación con un proyecto de urbanización previamente aprobado por la Junta.''

El artículo 9 del Reglamento de la Junta dispone:

''Los planos de Inscripción no se aprobarán hasta tanto se hayan terminado todas las explanaciones, calles, instalaciones, y demás obras de urbanización, o hasta que el urbanizador preste una fianza de ejecución, garantizando la terminación de tales obras dentro del término fijado por la Junta. No se levantará ningún edificio, ni se venderá o arrendará ningún terreno, ni se expedirá permiso para uso de terrenos o para edificaciones, hasta tanto los Planos de Inscripción hayan sido aprobados y registrados. Las fianzas de ejecución se prestarán en la forma prescrita por el Procurador General de Puerto Rico, y satisfactoria al Tesorero de Puerto Rico.''

Y los artículos 43 y 48 del mismo reglamento definen los Planos de Construcción y de Inscripción, respectivamente, en esta forma:

''*Artículo 43.—Definición.*—Los Planos de Construcción se definen aquí como una serie de mapas, dibujos y documentos, mediante los cuales se presenta a la Junta, para su aprobación, el plan del urbanizador. Esta aprobación constituye la aceptación oficial de que el proyecto está acorde con este Reglamento. Una vez aprobados, los Planos de Construcción servirán de base para la preparación de los Planos de Inscripción.

''Los dibujos incluídos en los Planos de Construcción se podrán hacer a lápiz, siempre y cuando que las copias que de ellos se obtengan sean legibles.''

''*Artículo 48.—Definición.*—Los Planos de Inscripción se definen aquí como una serie de mapas, dibujos y documentos, mediante los cuales se presenta el plan del urbanizador, para su inscripción y

archivó. Estos corresponderán, en todas sus partes, a los Planos de Construcción y a la construcción que representan. Los Planos de Inscripción se someterán a la Junta, y luego de su aprobación definitiva por ésta, el urbanizador procederá a presentarlos en el Registro de Planos de Lotificación para su inscripción y archivo.

"Los dibujos que incluyen los Planos de Inscripción se harán en forma clara y legible, en tinta negra, y en tela o papel de calcar."

Tenemos, por lo tanto, que si bien los Planos de Inscripción tienen que "corresponder en todas sus partes" a los Planos de Construcción, antes de que la Junta pueda aprobar los de Inscripción, el urbanizador tiene que haber terminado las explanaciones, calles, instalaciones y demás obras de urbanización o prestar una fianza de ejecución garantizando la terminación de tales obras dentro del término fijado por la Junta, según dispone el artículo 9 del Reglamento, supra, el cual dispone además que no se venderá o arrendará ningún terreno hasta tanto los Planos de Inscripción hayan sido aprobados y registrados.

Esta disposición del artículo 9 del Reglamento está en consonancia con el artículo 24 de la ley, pero es este artículo el que demuestra que no fué la intención legislativa conceder carácter de finalidad a los planos de construcción (¹) hasta tanto la Junta hubiere aprobado el plano de lotificación y autorizado su inscripción en el registro correspondiente. El artículo 24, en lo pertinente, dispone:

"Lotificaciones.—A partir de la fecha de vigencia de los reglamentos aplicables para lotificaciones según se dispone en el artículo 10 en la presente, no se hará en Puerto Rico ninguna lotificación de terrenos y no se aceptará para registrarlo ningún plano de lotificación de terrenos, ni se levantará ningún edificio, ni se venderá o arrendará ningún terreno en áreas urbanas o para urbanizaciones, ni se expedirá ningún permiso, excepto cuando y hasta dónde, se cumplan dichos reglamentos y hayan sido finalmente aprobados de acuerdo

(¹) Al aprobarse el 24 de agosto de 1945 por la Junta el plano de construcción del interventor, se hizo constar expresamente que "la aprobación de este Plano de Construcción, no autoriza la segregación y transferencia de los solares de este predio."

con los mismos por la Junta; *Disponiéndose, sin embargo,* que la Junta, a su discreción, pcdrá aprobar la venta o arrendamicnto de terreno en lotificaciones sólo después de su aprobación preliminar por la Junta, para 'hacer lo cual ésta queda por la presente autorizada. . . .''

▇▇▇ Bajo los hechos concurrentes en este caso, creemos que la cuestión a resolver no es si podía la Junta, después de aprobado el Plano de Construcción y ya en el trámite de la aprobación del Plano de Inscripción fijando la fianza correspondiente, señalar su cuantía y además imponer otras condiciones no incluídas en la aprobación del Plano de Construcción, (²) sino que la cuestión a resolver es si al actuar la Junta en dicha forma, su decisión o acción es una de las mencionadas en el artículo 26, supra, cuya revisión debió solicitarse de esta Corte Suprema y no de la corte inferior.

Si examinamos dicho artículo 26 con detenimiento veremos que, como admite el interventor, su redacción es bastante confusa. Creemos, sin embargo, que la interpretación limitada y estricta que le da en el sentido de que la resolución de la Junta, dictada el 2 de noviembre de 1945, fijando la cuantía· de la fianza e imponiendo otras condiciones para la aprobación final del plano de inscripción como requisito previo para autorizar la venta de solares del interventor, no está incluída entre las decisiones o acciones de la Junta a que se refiere dicho artículo 26, no debe prevalecer. La resolución de la Junta tuvo el efecto de denegarle al interventor la aprobación final del plano de lotificación a que se refiere el artículo 24 de la ley. Sin dicha aprobación el interventor no podía ni inscribir dicho plano ni vender solares. Tanto si la fianza exigida era excesiva como si las nuevas condiciones impuestas al interventor eran o no legales, constituyen una de las "decisiones o acciones" de la Junta en relación con la aprobación final de la lotificación o urbanización que el interventor,

---

(²)De acuerdo con el artículo 6 del Reglamento, la aprobación de los Planos de Construcción por la Junta "se considerará solamente como una aceptación *del diseño* en cuanto a su conformidad con este Reglamento."

896

como parte interesada, había solicitado, a que se refiere el último párrafo del artículo 26, supra. El hecho de que este artículo no mencione expresamente que la fijación por la Junta de la fianza autorizada en el artículo 9 del Reglamento, sea una de las "decisiones o acciones" revisables únicamente por este Tribunal, no significa que no esté incluída entre dichas decisiones o acciones si dicho trámite sobre fijación de fianza es un requisito previo para la aprobación final del plano de lotificación y su inscripción en el registro, como requisitos previos a la venta de solares de la urbanización.

Somos de opinión que no fué la intención legislativa autorizar dos procedimientos legales para revisar las decisiones o actuaciones de la Junta, a saber, uno ante este Tribunal y otro ante las cortes de distrito. Por el contrario una interpretación razonable del estatuto demuestra, a nuestro juicio, que la intención del legislador fué limitar las acciones judiciales a un solo foro, el de esta Corte Suprema, y aun en dichos casos limitar el alcance de la revisión a las cuestiones de derecho.

*Procede por lo expuesto anular la orden recurrida por carecer la corte inferior de jurisdicción para dictarla.*

El Juez Asociado Sr. Córdova se inhibió.