RAFAEL PICÓ, SANTIAGO IGLESIAS y S. L. DESCARTES, en su carácter de miembros y constituyendo la Junta de Planificación, Urbanización y Zonificación de Puerto Rico, recurrentes, *v.* CORTE DE DISTRITO DE SAN JUAN, HON. R. LA COSTA, JR., JUEZ, demandada; CEMENTERIO BUXEDA, INC., interventora.

Núm. 38.—*Sometido:* Marzo 4, 1946. *Resuelto:* Mayo 20, 1946.

160

*Ciro Malatrasi, Jr., Rafael R. Fuertes* y *Rafael Rodríguez Lebrón*, abogados de los peticionarios; *F. M. Susoni, Jr.* y *Pablo Defendini*, abogados de la interventora, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA emitió la opinión del tribunal.

Cementerio Buxeda, Inc. compró terreno para dedicarlo a un cementerio, solicitó del Comisionado de Sanidad expidiera el permiso necesario para la construcción del cementerio, y encontró que el Comisionado, a pesar de no tener objeción que hacer al proyecto, se negaba a expedir el permiso por habérselo así requerido la Junta de Planificación, Urbanización y Zonificación de Puerto Rico. Radicó entonces demanda contra la Junta y el Comisionado, alegando los hechos ya expuestos y solicitando un *injunction* prohibiendo a la Junta intervenir con el Comisionado, y al Comisionado darle intervención alguna a la Junta, en lo relativo al permiso interesado. Los demandados radicaron moción para desestimar la demanda por no aducir ésta hechos suficientes y por carecer la corte inferior de jurisdicción. La corte inferior declaró sin lugar la moción para desestimar, y es ésa la resolución objeto de revisión en este recurso de *certiorari* iniciado a tenor del artículo 671A del Código de Enjuiciamiento Civil de Puerto Rico (Ley núm. 32 de 3 de mayo de 1943 (pág. 85)).

Después de expedirse el auto, la legislatura derogó el artículo 671A del Código de Enjuiciamiento Civil. Invitadas las partes a informar sobre el efecto que esa derogación tiene en cuanto a nuestra jurisdicción para continuar

conociendo del recurso, ambas partes están conformes en que nuestra jurisdicción no puede ya apoyarse en el artículo derogado, y sólo puede ejercerse si el recurso está comprendido entre los de certiorari clásico que autorizan los artículos 670 y 671 del Código de Enjuiciamiento Civil. La Junta recurrente sostiene que se trata de un caso propio para revisión mediante certiorari clásico, y que debemos resolverlo en sus méritos. La interventora Cementerio Buxeda, Inc., sin impugnar nuestra jurisdicción para continuar conociendo del caso, sugiere que no es un caso propio para el certiorari clásico y por lo tanto debemos anular el auto y devolver el caso a la corte inferior.

El caso gira en torno a la impugnación que de la jurisdicción de la corte inferior hace la Junta peticionaria. El certiorari clásico procede para determinar si las actuaciones de cortes inferiores se exceden o no de su jurisdicción. *Bravo* v. *Corte*, 60 D.P.R. 272; *Pujals Carlo* v. *Corte*, 40 D.P.R. 419. Tenemos, por lo tanto, jurisdicción para seguir conociendo del recurso. Y aunque difícilmente consideraríamos propio el expedirlo si se solicitara ahora por primera vez, el hecho es que se expidió el auto, y las partes han informado extensamente, oralmente y por escrito, faltando sólo la decisión de este Tribunal. En esas circunstancias creemos que los intereses de las partes litigantes quedarán mejor servidos si continuamos entendiendo del caso y resolvemos las cuestiones planteadas.

La cuestión principal que plantea la Junta peticionaria es que la corte inferior carece de jurisdicción para conocer del caso, ya que la Ley núm. 213 de 12 de mayo de 1942 (Leyes de 1942, (1) pág. 1107), según enmendada por la núm. 155 de 14 de mayo de 1943 (Leyes de 1943, pág. 489) en su artículo 26 dispone en efecto que cualquier persona interesada en la aprobación de un plano de lotificación que haya desaprobado la Junta de Planificación, Urbanización y Zonificación de Puerto Rico, podrá solicitar la revisión de la

decisión de la Junta por esta Corte. Según resolvimos en *Picó et als.* v. *Corte*, 65 D.P.R. 838, la jurisdicción de esta Corte para revisar las decisiones de la Junta de Planificación sobre lotificación de acuerdo con el artículo 26 de la ley citada, es exclusiva.

La interventora sostiene que no se trata de un caso de lotificación, por lo que no es de aplicación el artículo 26 de la Ley núm. 213.

La Ley núm. 213 de 1942, según enmendada, faculta a la Junta de Planificación, Urbanización y Zonificación de Puerto Rico para reglamentar la "lotificación" y "zonificación" de terrenos en Puerto Rico. "Lotificación" significa la división o subdivisión de una parcela en dos o más partes para la venta o para una nueva construcción (Artículo 2). "Zonificación" significa la determinación del uso que se permitirá hacer del terreno en distintas zonas o distritos (Artículo 9).

El artículo 24 de la Ley núm. 213, según enmendado, dispone en lo pertinente como sigue:

"Artículo 24.—*Lotificaciones.*—A partir de la fecha de vigencia de los reglamentos aplicables para lotificaciones según se dispone en el artículo 10 en la presente, no se hará en Puerto Rico ninguna lotificación de terrenos y no se aceptará para registrarlo ningún plano de lotificación de terrenos, ni se levantará ningún edificio, ni se venderá o arrendará ningún terreno en áreas urbanas o para urbanizaciones, ni se expedirá ningún permiso, excepto cuando y hasta dónde, se cumplan dichos reglamentos y hayan sido finalmente aprobados de acuerdo con los mismos por la Junta; . . .".

Suponiendo, sin resolverlo, que las disposiciones de la Ley núm. 213 en cuanto a *lotificación* se refiere son aplicables a los cementerios, resta determinar si existe un reglamento de la Junta que rija tales lotificaciones. Si existe tal reglamento, no procede, de acuerdo con el artículo 24 de la ley, que el Comisionado de Sanidad expida permiso de construcción a la interventora hasta que la junta apruebe los planos,

y la decisión de la Junta aprobando o desaprobando los planos sólo podrá impugnarse mediante el recurso de revisión provisto en el artículo 26 de la ley.

La Junta recurrente sostiene que existe un reglamento aplicable a cementerios, el Reglamento de Lotificación promulgado el 29 de junio de 1944. Dispone el artículo 1 del Reglamento que "toda lotificación (urbanización) de terrenos en Puerto Rico, tanto urbanos como rurales, se regirá por las disposiciones del presente Reglamento . . .", y al igual que la Ley núm. 213 define lotificación como la división o subdivisión de un solar, predio o parcela de terreno en dos o más partes para la venta o para una nueva construcción, incluyendo urbanización. Si nos atenemos a la letra del artículo 1, podría decirse que la definición de "lotificación" comprende la división de terreno en parcelas para tumbas. Una lectura de la totalidad del Reglamento, sin embargo, nos convence de que no es aplicable a cementerios. Veamos.

Habla el Reglamento de tres clases de "lotificaciones": la división de fincas en la zona rural para fines agrícolas (Artículo 1), la urbanización propiamente dicha, o sea, el desarrollo de terreno para ser poblado (a ésta le son aplicables sustancialmente todos los sesenta artículos del Reglamento) y la lotificación simple (Artículo 13), o sea, aquella división de terreno para venta o construcción que no exija "la construcción de calles y otras obras de urbanización", y para aprobar las cuales no es por lo tanto necesario se presente a la Junta un plano de construcción. Es obvio que los cementerios no caben ni dentro de la primera ni dentro de la última clasificación, pues ni se dedican a fines agrícolas, ni prescinden de calles o paseos y otras construcciones que aconsejan, si no exigen, un plano de construcción. Tampoco caben, a nuestro juicio, en la clasificación de urbanizaciones, según se desprende del Reglamento. Las obras de urbanización, según el artículo 39, por ejemplo, contendrán los siguientes requisitos: explanación del terreno dedicado a so-

lares cuando el nivel de los mismos resultase más bajo o considerablemente más alto que la rasante de la calle; abastecimiento de agua para cada solar; bocas de incendio que no se situarán a una distancia mayor de 185 metros una de otra; alcantarillado de aguas negras para cada solar. El artículo 17 nos dice que *la lotificación* del terreno se hará en tal forma que cada solar quede provisto con acceso a una calle o carretera pública. El artículo 15 nos dice cuándo la Junta no aprobará una lotificación: cuándo habrá de crear solares que no provean condiciones para edificar, o un ambiente saludable para la vivienda; cuándo la demanda para tal lotificación no justifique su desarrollo inmediato, y cuándo el uso del terreno no se ajusta a las ordenanzas vigentes de zonificación.(¹) Los artículos 16 al 33, inclusive, tratan de las calles, aceras, callejones, senderos, servidumbres, encintados, cunetas, pendientes, curvas, rectas y encrucijadas, y el 34 del tamaño de las manzanas, de toda urbanización. El artículo 37 habla de las escuelas, parques y campos de recreo y deporte en las urbanizaciones, y dispone que por lo menos el cinco por ciento del área total de *toda lotificación* se reservará y dedicará legalmente para fines *recreativos*. El artículo 38 habla de la designación y numeración de calles y solares.

Hemos mencionado algunos de los artículos del Reglamento contentivos de disposiciones especialmente aplicables al ordenamiento del terreno que usan los hombres para vivir, moverse y trabajar y especialmente inaplicables al ordenamiento de un camposanto. La lectura de la totalidad del Reglamento sólo confirma la impresión que dan estos artículos de que el Reglamento no es aplicable a la distribución interna del terreno dedicado a un cementerio, como tampoco es ni pretende serlo, aplicable a la distribución interna de terreno dedicado a hospitales, escuelas, universidades y otras instituciones.

---

(¹)Esta última disposición no es pertinente al caso de autos, por no estar envuelta la aplicación de ninguna ordenanza de zonificación.

Francamente, no sabemos, ni nos dice la Junta, en qué forma aplicaría, o podría aplicar el Reglamento de Lotificación si se le presentara para su aprobación un plano de un cementerio. Las normas y requisitos que fija el Reglamento no serían aplicables. Tendría la Junta que proceder por primera vez a fijar normas y requisitos mínimos para un cementerio, normas y requisitos que fueran aplicables a cementerios en general. En otras palabras, tendría que adoptar el reglamento para cementerios que hoy no tiene.

No es necesario que resolvamos si la Junta tiene la facultad, de acuerdo con la Ley núm. 213, según enmendada, para reglamentar el ordenamiento interno del terreno de un cementerio. Como ya hemos indicado, tampoco está envuelta en este caso la facultad de la Junta para zonificar. Lo único que resolvemos es que la Junta no ha reglamentado la distribución interna de los terrenos de los cementerios, o sea, lo que podría llamarse la lotificación de esos terrenos si es que se trata de una lotificación según se define la palabra en la Ley núm. 213.

No habiendo reglamento de la Junta aplicable al caso, no es de aplicación el artículo 24 de la Ley núm. 213 que prohibe se expida permiso de construcción excepto cuando y hasta donde se cumplan los reglamentos de la Junta, ni tampoco es aplicable el artículo 26 de la ley que permite la revisión ante esta corte de las decisiones de la Junta aprobando o desaprobando planos de lotificación, ya que ni la Junta ha resuelto nada ni se trata de un caso en que se necesite la aprobación de planos por la Junta.

No erró por lo tanto la corte inferior al determinar que tenía jurisdicción para conocer del caso.

La Junta recurrente plantea otra cuestión en este recurso: que de la demanda de Cementerio Buxeda, Inc., aparece que la demandante no tiene capacidad para demandar, por haber sido organizada con el propósito de comprar y vender bienes inmuebles, en violación de la Resolución Con-

junta del Congreso de Estados Unidos de mayo 1, 1900. De la demanda resulta que la corporación demandante se creó con el fin de adquirir, construir, operar y mantener uno o más cementerios en Puerto Rico. Arguye la recurrente que no se puede desarrollar y mantener un cementerio sin enajenar el terreno. No estamos de acuerdo. Una iglesia no enajena su terreno o parte de su edificio por el hecho de que en ella se entierren cadáveres. Ni creemos que al verificarse un entierro en el Cementerio Nacional de Arlington, por ejemplo, pueda decirse que el gobierno enajena su terreno. No es esencial, pues, al desarrollo de un cementerio el enajenar terreno, aun cuando comúnmente se haga. De la demanda no aparece que la corporación se proponga enajenar el terreno. Por lo tanto, aun suponiendo, sin resolverlo, que la prohibición de la Resolución Conjunta de 1 de mayo de 1900 sea aplicable a una corporación que se dedique exclusivamente a explotar un cementerio y como incidente de ese negocio enajene parcelas para tumbas, no puede decirse que de la demanda surja que la demandante haya violado el estatuto citado, y mucho menos que carezca de capacidad para demandar.

*Por los fundamentos expuestos, debe anularse el auto expedido y devolverse el caso a la corte inferior.*