BARTOLO FORTUNET, apelante, *v.* LA JUNTA DE PLANIFICACIÓN, URBANIZACIÓN Y ZONIFICACIÓN DE PUERTO RICO, querellada.

Núm. 5.—*Sometido:* Abril 11, 1947. *Resuelto:* Abril 28, 1947.

---

*José O. Sabater*, abogado del apelante; *Rafael R. Fuertes* y *Félix Bello*, abogados de la querellada.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Por escritura pública número setenta y siete otorgada ante el notario José Sabater en Mayagüez el 19 de abril de 1944, don Bartolo Fortunet adquirió por compra de doña Elvira Quiñones una finca urbana que se describe así:

"Urbana: Solar radicado en la calle Sol de esta ciudad de Mayagüez, que mide una superficie de doscientos setentiséis metros un centímetro cuadrados (276–01) y que colinda al Norte con casa de la sucesión Arzamendi; por el Sur con la calle del Sol en que radica; por el Este con propiedad de F. Carrera & Hermano y por el Oeste con propiedad de Alejo Llull. Contiene las siguientes edificaciones: que le pertenecen, una casa de madera, semialta, con los bajos de mampostería, balcón al frente, que mide seis metros setentidós centímetros de frente por igual medida de fondo y otra casa de mampostería, terrera, cobijada de zinc, de seis metros un centímetro de frente por siete metros veintidós centímetros de fondo, con

su cocina que mide dos metros setentiún centímetros de frente por un metro ochentidós centímetros de fondo.''

El día 28 de febrero de 1945 don Bartolo Fortunet segregó de la finca principal antes descrita una de las casas y su solar y se la vendió a don Antonio Masdeu y el 13 de octubre de 1945, por escritura pública número 171 otorgada ante el mismo notario, vendió la otra casa y solar a don Bartolo Rivera Pérez. Por constituir la segregación hecha por el Sr. Fortunet una lotificación se solicitó la aprobación de la Junta de Planificación, Urbanización y Zonificación de Puerto Rico con el fin de que los nuevos adquirentes pudieran inscribir sus títulos en el Registro de la Propiedad. La Junta desaprobó la lotificación por el fundamento de que ''Aun cuando los solares a formarse mediante la propuesta lotificación tienen todas las facilidades requeridas por esta Junta para áreas donde han de aprobarse lotificaciones, los mismos tendrían frentes de 6.75 metros y 9.02 metros y sus respectivas áreas 131.14 m/c y 169.69 m/c, hechos contrarios a lo establecido en los artículos 34 y 36 del Reglamento de Lotificación que exigen un frente mínimo de 12 metros y persiguen un área mínima de 300 m/c.''

Solicitada la reconsideración y celebrada una vista la Junta la denegó haciendo constar al final de su resolución que ''. . . mediante la prueba presentada no se ha probado que efectivamente existe una segregación DE HECHO, con anterioridad al 5 de septiembre de 1944 . . .''

A petición de Fortunet expedimos el auto de revisión en este caso. Sostiene el peticionario que la Junta no puede impedir la inscripción en el Registro de la Propiedad de segregaciones y edificaciones ya existentes con anterioridad a la aprobación de la ley que creó la Junta o de los reglamentos aprobados por ésta si se demuestra la imposibilidad de cumplir con dichos reglamentos.

No obstante lo dicho por la Junta al final de su resolución, supra, en el alegato presentado ante este Tribunal dice:

". . . esta Junta querellada acepta que como ·cuestión DE HE-CHO las dos (2) casas existen edificadas con anterioridad a la Ley y al Reglamento."

Y es que la prueba presentada ante. la Junta demostró que, como cuestión de hecho, en el solar original se construyeron las dos casas desde hace más de veintitrés años; que cada una de las casas está tasada y paga contribuciones separadamente; que cada casa tiene numeración distinta, o sea, los números 5 y 7 de la Calle Santiago R. Palmer (antes Sol). Es un hecho probado, además, que las dos casas colindan con otras edificaciones de carácter permanente que impiden el que pueda ampliarse el solar en que cada una de ellas está situada.

En el recurso gubernativo de *Rivera* v. *Registrador*, 64 D.P.R. 461, al confirmar una nota que denegó la inscripción de una segregación, dijimos que el término lotificación, según el mismo se define en el artículo 2 de la Ley de Planificación, Urbanización y Zonificación, no excluye de su significado las parcelas de terrenos donde existan edificaciones y que al dividirse un solar en dos parcelas para vender una de ellas, se practica una lotificación y resolvimos, copiando del sumario 4, que: "Apareciendo que tanto la división en dos parcelas del solar en que enclavan unas casas como la venta de una de dichas parcelas con su casa correspondiente se efectuaron cuando ya estaba en vigor la Ley de Planificación, Urbanización y Zonificación, el registrador procedió correctamente al negarle inscripción a dicha venta por no habérsele presentado el correspondiente plano de lotificación aprobado por la Junta de Planificación o la certificación de esa Junta dispensando esa presentación."

En el curso de la opinión en dicho caso dijimos, además, lo siguiente a la página 465:

"Es verdad que la casa construída en el solar vendido a Ramón Rivera *había sido edificada mucho antes* de aprobarse la Ley de Planificación, Urbanización y Zonificación de Puerto Rico, y a primera vista esta circunstancia parece indicar que la transacción objeto

de la escritura no debe estar sujeta a la ley ni al Reglamento de Lotificación, ni tampoco al aprobado por el Procurador General de Puerto Rico por la autoridad conferídale por la ley. Pero a poco que reflexionemos sobre el asunto, nos daremos cuenta de que el Reglamento de Lotificación, *independientemente de la construcción del edificio,* exige ciertos requisitos en relación con el solar donde el edificio enclava, por ejemplo, el área del solar, su separación del límite de solares contiguos, abastecimiento de agua para el solar en forma que se ajuste a los requisitos del Departamento de Sanidad, área del patio en frente, al lado o detrás del edificio, etc. Si el solar donde enclava la casa vendida a Ramón Rivera no se ajusta a los requisitos exigidos por la ley, indudablemente que la Junta de Planificación podría requerir que de alguna manera se corrigiese la deficiencia, bien sea adquiriendo más solar o en alguna otra forma razonable dentro de las circunstancias. A estos efectos, prescribe el artículo 51 del Reglamento de Lotificación, *que cuando se demuestre a la Junta que existen dificultades extraordinarias que impidan el cumplimiento cabal del Reglamento, la Junta podrá modificar la aplicación de cualquier sección del mismo, siempre y cuando no se perjudique el bienestar público. . . ."* (Bastardillas nuestras.)

Aplicando estos razonamientos al caso de autos podemos decir que habiéndose otorgado la escritura de segregación por el peticionario Fortunet con posterioridad a la vigencia de la Ley de Planificación y del Reglamento de Lotificación, el hecho de que en los dos solares existieran dos casas edificadas con anterioridad a dicha vigencia no hace inaplicable dicha ley y reglamento. Empero, como dijimos en el caso de *Rivera,* la sección 51 del Reglamento de Lotificación dispone que "cuando se demuestre a la Junta que existen dificultades extraordinarias que impidan el cumplimiento cabal del Reglamento, la Junta puede modificar la aplicación de cualquier sección del mismo, siempre y cuando no se perjudique el bienestar público."

¿No se demostró en el presente caso que existen dichas dificultades extraordinarias? Creemos que sí. La propia Junta en su resolución admite que "los solares a formarse mediante la propuesta lotificación *tienen todas las facilida-*

*des requeridas por esta Junta para áreas donde han de aprobarse lotificaciones"* pero denegó su aprobación únicamente por el hecho de que los solares segregados tendrían menos de 200 m/c y menos de 12 metros de frente. Pero es que la prueba demuestra que los dos solares en que radican las casas no sólo colindan entre sí sino que en sus otras colindancias existen edificaciones de carácter permanente que impiden el que pueda ampliarse el solar de cualquiera de las dos casas. Y esta situación no ha sido creada por la segregación realizada en el año 1945 sino que de hecho ha existido desde hace más de veinte años y lo que ahora se persigue es poder legalizarla en el Registro de la Propiedad, mediante la inscripción correspondiente, cumpliendo así con la política pública de que las fincas aparezcan inscritas a nombre de sus dueños. No alcanzamos a ver qué perjuicio para la "seguridad, salud, defensa, moral, orden, conveniencia, prosperidad, cultura, solidez económica y bienestar general de los actuales y futuros habitantes de esa zona," según dijo la Junta en su resolución denegando la reconsideración solicitada por el peticionario, pueda existir en un caso como el presente en que no se trata de obtener la aprobación de una urbanización en proyecto, con nuevas edificaciones, sino de legalizar una situación de hecho existente desde hace más de veinte años y especialmente cuando, como hemos dicho, la propia Junta en su resolución original reconoce que los solares a formarse mediante la propuesta lotificación reúnen " . . . todas las facilidades requeridas por esta Junta . . ."

Somos de opinión que la Junta recurrida cometió error de derecho al no aplicar el artículo 51 del Reglamento, supra, a los hechos de este caso y en su consecuencia que *debe anularse la resolución recurrida y devolverse el caso para ulteriores procedimientos.*