CANDELARIO ALICEA, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, recurrido.

Núm. 1259.—*Sometido:* Noviembre 7, 1949. *Resuelto:* Junio 21, 1950.

*J. C. Rodríguez Cebollero,* abogado del recurrente; el Registrador recurrido no compareció; *Rafael R. Fuertes, Félix Bello* y *A. Sandín del Manzano,* abogados de la Junta de Planificación, como *amicus curiae* ésta.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El primero de noviembre de 1944 Gonzalo Diago, en su carácter de Administrador de la Capital, otorgó ante el notario Luis A. Castro escritura de "Ejecución de Subasta y Cesión y Traspaso de Solar" a favor del aquí recurrente Candelario Alicea, en la cual se consignaba que la Capital de Puerto Rico era dueña en pleno dominio de una finca con un área de 64,313.60 metros cuadrados—que en dicha escritura se describía—inscrita en el registro de la propiedad; que de acuerdo con la Ordenanza núm. 2 de 1944, aprobada por la Junta de Comisionados de la Capital el 9 de febrero de ese año, el Administrador de la Capital procedió a anunciar la subasta, por ella autorizada, de unos solares en la antes mencionada finca, según plano levantado por el ingeniero municipal Juan José Otero el 6 de octubre de 1944; que el 25 de octubre de ese año se recibió por la Junta Administrativa, actuando como Junta de Subastas, un pliego presentado por el aquí recurrente conteniendo una proposición para adquirir el solar marcado con el número 20 de la calle Núñez Prieto, según dicho plano, y que dicha Junta, por unanimidad, acordó conceder la buena pro del mismo al aquí recurrente "por la suma de un dólar", según certificación librada al efecto por el Secretario Interino de la Capital, unida a dicha escritura; y que en cumplimiento del mandato contenido en la mencionada Ordenanza, procedía el Administrador de la Capital a trasmitir al aquí recurrente "todo título o interés que la Capital de Puerto Rico pudiera tener en y respecto del referido solar, para que dicho solar sea inscrito como una finca independiente a nombre del segundo compareciente, en el registro de la propiedad", verificándose dicho traspaso "en consideración al precio nominal de un dólar que el segundo compareciente entrega al primer compareciente en. el acto del otorgamiento de este instrumento público".

Se hizo constar en la escritura que "el segundo compareciente don Candelario Alicea, ha estado en posesión de un solar conocido como el solar número 20, calle Núñez Prieto. . ." (Se describe el solar, que consta de 134.10 metros cuadrados.)

Transcurridos varios años desde su otorgamiento, fué presentada la referida escritura(¹) para inscripción al Registrador de la Propiedad de San Juan, quien el 28 de julio de 1949 denegó su inscripción con la siguiente nota:

"DENEGADA la inscripción de este documento por no haberse acreditado en documento alguno que la Junta de Planificación, Urbanización y Zonificación de Puerto Rico haya aprobado la segregación del solar aquí descrito, habiéndose tomado en su lugar anotación por 120 días a favor de Candelario Alicea, folio 107 del tomo 332 de Santurce Norte, finca 12081, anotación A con los defectos subsanables de no expresarse el estado civil del adquirente, las circunstancias personales de Gonzalo Diago y las colindancias del solar que se halla libre de cargas."

Contra esta nota interpuso el recurrente el presente recurso, sosteniendo que el Registrador cometió error (1) al requerir documento de la Junta de Planificación aprobando la segregación del solar cuya inscripción solicitaba, ya que

---

(¹) Juntamente a dicha escritura el recurrente presentó al Registrador copia certificada de la Ordenanza número 2, aprobada por el Gobierno de la Capital el 9 de febrero de 1944, la cual, en su sección primera, lee así:

"Por la presente se autoriza y ordena al Administrador de la Capital a ceder en arrendamiento o en venta, según fueren las circunstancias en cada caso, mediante subasta pública, todos y cada uno de los solares propiedad del Gobierno de la Capital, radicados en las barriadas de este término municipal denominadas Shangai y San Ciprián. Las parcelas o solares a que se refiere esta sección aparecen descritos y enumerados en la relación de los mismos que obra en poder del Secretario de la Capital y del Auditor de la Capital, copia de la cual se adhiere a esta Ordenanza."; copia de un plano parcelario de la finca principal hecho por el ingeniero municipal Juan José Otero; una declaración jurada del recurrente en la que expone que en el solar que se le traspasó por la mencionada escritura de referencia ubica una casa construída en el año 1933 y una copia sin certificar de una lista de personas que ocupaban solares en la finca principal. El recurrente ha elevado también copia de una "Declaración de Intención de Lotificación", sometida a su nombre a la Junta de Planificación, Urbanización y Zonificación, de fecha 30 de marzo de 1949, en la que se describe la finca principal de la cual forma parte el solar a que se refiere la escritura cuya inscripción denegó el Registrador. Aparece unida a dicho documento una comunicación dirigida al recurrente por el Secretario de la referida Junta, de fecha 2 de mayo de 1949, devolviéndole dicha solicitud (Forma Núm. 31) con el siguiente comentario: "Solicitud de lotificación del solar propuesto debe ser sometida a través del Municipio de San Juan como parte proponente, debidamente cumplimentada."

·según el recurrente dicho solar fué de hecho segregado en el año 1932; (2) al decidir que es a la Junta de Planificación a la que compete aprobar o denegar las segregaciones a la finca principal; (3) al decidir que no se estableció de hecho, la segregación de dicho solar antes de 1942; (4) al discriminar en la inscripción de las segregaciones de solares de la finca principal, inscribiendo unos y no inscribiendo otros, y (5) al darle carácter retroactivo a la Ley núm. 213 de 12 de mayo de 1942 ((1) pág. 1107).

■ Los anteriores señalamientos, aunque hechos separadamente, presentan una sola cuestión legal que consideraremos más adelante, sin dar atención al marcado con el número (4) ya que en primer lugar, nada hay en autos que acredite que segregaciones de la finca principal aquí envuelta hayan · sido inscritas en el registro de la propiedad; y en segundo lugar, por no ser función de este Tribunal, en un recurso de esta naturaleza, pasar sobre cuestiones ajenas a los méritos de la cuestión en él envuelta atendiendo a la ley a a los fundamentos expuestos por el Registrador al denegar la inscripción de un documento. Réstanos, por lo dicho, determinar si actuó acertadamente el Registrador al exigir, para la inscripción de la escritura que nos ocupa, el documento acreditando la aprobación previa de la Junta de Planificación a la segregación y traspaso del solar adquirido por el recurrente.

■■ Como hemos visto, se trata aquí de una finca que según la escritura, pertenecía al Gobierno de la Capital.(²) La ordenanza en virtud de la cual se procedió a anunciar la subasta y a hacer la adjudicación al aquí recurrente se aprobó el 9 de febrero de 1944. La escritura se otorgó el primero de noviembre de 1944.

El artículo 24 de la Ley núm. 213 de 12 de mayo de 1942, según ha sido enmendado, dispone en parte lo siguiente:

(²) La Junta, en su alegato como *amicus curiae*, sostiene que por dicha escritura ejecutó el Gobierno de la Capital "un acto de enajenación de propiedad de El Pueblo de Puerto Rico bajo su custodia (*trust*)." Hemos de limitar el alcance de esta opinión únicamente a la cuestión suscitada por la nota denegatoria.

"A partir de la fecha de vigencia de los reglamentos aplica-. bles para lotificaciones según se dispone en el artículo 10 en la presente, no se hará en Puerto Rico ninguna lotificación de terrenos y no se aceptará para registrarlo ningún plano de lotificación de terrenos, ni se levantará ningún edificio, ni se venderá o arrendará ningún terreno en áreas urbanas o para urbaniza-ciones, ni se expedirá ningún permiso, excepto cuando y hasta dónde, se cumplan dichos reglamentos y hayan sido finalmente aprobados de acuerdo con los mismos por la Junta; *Disponiéndose, sin embargo,* que la Junta, a su discreción, podrá aprobar la venta o arrendamiento de terreno en lotificaciones sólo después de su aprobación preliminar por la Junta, para hacer lo cual ésta queda por la presente autorizada.  . . ."

Y en su última oración provee:

"Ningún registrador aceptará para inscribirlo, ningún plano de lotificación que no haya sido finalmente aprobado y firmado por la junta, ni ningún traspaso, o convenio de traspaso, de una parcela de terreno, ni interés en la misma, dentro de una lotificación, a menos que se haya registrado un plano final o preliminar aprobado por la Junta."

Con relación a esta última disposición del artículo 24, dijimos en *Rivera* v. *Registrador*, 64 D.P.R. 461, 466, ". . . La Ley no concede al registrador discreción alguna en cuanto a eximir de las obligaciones impuestas por la ley o los reglamentos.  Su deber es rechazar el documento del cual se solicita inscripción si no se presenta el correspondiente plano aprobado por la Junta o la certificación de la correspondiente dispensa otorgada también por la Junta.  Como en este caso no se presentó ni una ni otra cosa, actuó correctamente el registrador al denegar la inscripción del documento."  Este principio fué ratificado en *Ramos* v. *Registrador*, 69 D.P.R. 708.

Si de hecho el solar segregado existía como tal con anterioridad a la vigencia del Reglamento de Lotificación, no es cosa que compete al Registrador determinar en primera instancia y sí a la propia Junta.(3)   Y contrario a lo que

---

(3) Como limitación a esta regla véase *Rosado* v. *Registrador*, ante, pág. 553.

afirma el recurrente, el Registrador en este caso no hizo pronunciamiento alguno respecto a si la segregación de hecho existía o no antes de la vigencia del Reglamento de Lotificación. Su actuación denegando la inscripción del documento siguió el mandato de la ley de no inscribir una lotificación sin previa aprobación por la Junta. El hecho de que se aprobara una ordenanza por el Gobierno de la Capital el 9 de febrero de 1944 autorizando al Administrador a ceder solares *en venta* o *en arrendamiento*, según fueren las circunstancias de cada caso *mediante subasta pública*, (⁴) no es de por sí un hecho determinante de que en efecto existía una segregación previamente a la aprobación del Reglamento de Lotificación. Tal hecho había que acreditarlo fehacientemente ante la Junta para que ésta, en el ejercicio de sus facultades para la administración de la ley, hiciera un pronunciamiento en tal sentido, *de no haber otros impedimentos de ley para ello*, y poder entonces el recurrente, con la constancia de tal determinación, acudir al Registro para la inscripción correspondiente. *Rivera* v. *Registrador*, supra; *cf. Matos* v. *Junta*, 66 D.P.R. 439. Ya dijimos en *Rivera* v. *Registrador*, supra, que "al definir el término 'lotificación', a los efectos de la ley, no se excluyen de su significado las parcelas de terreno donde existan edificaciones." Al mismo efecto véase *Fortunet* v. *Junta de Planificación*, 67 D.P.R. 265, 269. El hecho, pues, de que en el solar segregado y vendido al recurrente existiera una edificación con anterioridad—según él—a la vigencia del Reglamento de Lotificación, no hace inaplicable el mismo, pues es ahora, después de estar éste en vigor, que se lleva a cabo la venta y se hace—aparentemente y hasta que la Junta otra cosa resuelva— la segregación. Véase *Zayas* v. *Registrador*, 68 D.P.R. 43. El Registrador, por tanto, no dió, como sostiene el recurrente, efecto retroactivo a la ley.

---

(⁴) No está envuelta en este recurso la validez de la referida ordenanza, ni la de la adjudicación y venta hechas al recurrente por el precio de un dólar.

■ Por otro lado, todas las apariencias de este caso tienden a indicar que se trata de un proyecto del Gobierno de la Capital, por el cual éste, conforme a la ordenanza antes mencionada, dispuso de los terrenos envueltos, cediendo los mismos en venta y en arrendamiento, para afrontar la situación creádale por una barriada que fué creciendo hasta cubrir toda el área de la finca principal, sin planes previos de desarrollo urbano. En tal caso, como lo indicó la Junta al devolver al recurrente el documento de "Declaración de Intención de Lotificar" erróneamente sometido por él a la Junta—véase nota (1)—corresponde al propio Gobierno de la Capital someter el proyecto a la Junta, de conformidad con el artículo 22 de la Ley, a los fines correspondientes. Véase *Municipio v. Junta*, 67 D.P.R. 768.

Bajo los hechos de este caso, y dentro de las limitaciones y función de este recurso, resolvemos que el Registrador no aplicó retroactivamente la Ley núm. 213 de 12 de mayo de 1942; que actuó correctamente al denegar la inscripción solicitada por no haberse acreditado la previa aprobación, por la Junta, de la segregación y venta del solar adquirido por el recurrente, y que es a dicho organismo al que corresponde, dentro de las facultades que la ley le marca, dar la autorización o la dispensa correspondientes para las segregaciones verificadas después de la vigencia del Reglamento de Lotificación.

*Procede confirmar la nota recurrida.*