RAÚL MARTÍNEZ, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE MAYAGÜEZ, recurrido.

Núm. 1275.—*Sometido:* Marzo 1, 1951. *Resuelto:* Marzo 12, 1952.

*José Sabater*, abogado del recurrente; el Registrador recurrido compareció por escrito; *Rafael R. Fuertes, A. Sandín del Manzano, José L. Purcell* y *Jacob Bonilla Díaz*, abogados de la Junta de Planificación, ésta como *amicus curiae*.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

Por escritura otorgada el 4 de agosto de 1950 en la ciudad de Mayagüez ante el notario José Sabater, que lleva el número 136 en su protocolo de ese año, el recurrente Raúl Martínez y su esposa Olga Ibarra constituyeron hipoteca voluntaria en garantía del pago del importe de un pagaré a la orden del portador por la suma de $10,000 de principal, a vencer a su presentación, con intereses al 8 por ciento anual en caso de mora hasta su total pago, sobre un solar de 314.76 metros cuadrados[1] que forma parte de otro

---

[1] La descripción que del mismo se hace en la escritura es la siguiente:

"Solar que da su frente al Boulevard Santiago Veve por donde colinda al NORTE en una longitud de doce metros; por el SUR colinda con más terrenos de la finca propiedad del propio Don Raúl Martínez en una longitud de quince metros treintisiete centímetros; por el ESTE mide veintitrés metros veinticuatro centímetros de longitud por donde colinda con una calle denominada 'José Carmelo Martínez'; y por el OESTE mide veintitrés metros y colinda con terrenos de Infanzón & Rodríguez, hoy

solar de 1120.80 metros cuadrados, de su propiedad, inscrito este último en el Registro de la Propiedad de Mayagüez.

Presentada al Registro la escritura, el Registrador denegó su inscripción por considerar que el constituir hipoteca sobre una porción de la finca principal, descrita la misma con cabida y colindancias propias, constituía una lotificación, sin que se hubiera acreditado que para ello mediara aprobación de la Junta de Planificación—en adelante la Junta.

 Según el Registro, el solar de 1120.80 metros cuadrados estaba afecto a otras dos hipotecas garantizando el pago del importe de dos pagarés al portador: una, constituída sobre la totalidad de dicho solar, por $12,000; la otra, por $1,000, constituída sobre la porción de 314.76 metros cuadrados que fué objeto de la nueva hipoteca cuya inscripción motiva el presente recurso.

El recurrente sostiene que por virtud de la inscripción que hizo el Registrador de la hipoteca anterior constituída sobre la porción de 314.76 metros cuadrados—según escritura núm. 197 otorgada ante el notario José Sabater el 5 de octubre de 1949—dicho solar quedó inscrito "aun cuando dentro de la inscripción de la finca" de 1120.80 metros cuadrados; y que, hecha la inscripción, ésta quedó "bajo la salvaguardia de los tribunales de justicia, únicos que pueden declarar la validez o nulidad de una inscripción." Cita los casos de *Gerena* v. *El Registrador de Humacao*, 26 D.P.R. 87; *Collazo* v. *El Registrador*, 25 D.P.R. 644; *Bolívar et al.* v. *El Registrador de la Propiedad*, 13 D.P.R. 375 y *Roca* v. *Banco Territorial y Agrícola*, 6 D.P.R. 164 (2da. ed.) Sos-

la Escuela Vocacional. Tiene una medida superficial cuadrada de trescientos catorce metros setentiséis centímetros."

En el párrafo primero de la escritura, luego de hacerse la anterior descripción, se hizo constar:

"En este solar acaba de fabricar con su peculio propio don Raúl Martínez, casado con su esposa compareciente, un edificio de concreto armado de dos plantas, en el cual falta sólo terminar algunos detalles de ornamentación y estará listo para ocuparse y utilizarlo dentro de quince días, con todas las comodidades y adelantos modernos."

tiene además, citando el caso de *Mayagüez Sugar Co.* v. *Registrador*, 40 D.P.R. 82, que no se trata aquí de una *segregación* y que él tiene derecho a hipotecar su propiedad sin intervención de la Junta.

Tanto el Registrador recurrido como la Junta—que comparece en este recurso como *amicus curiae*—sostienen que de acuerdo con la Ley núm. 213 de 12 de mayo de 1942 ((1) pág. 1107), según ha quedado enmendada en su artículo 2 por la núm. 388 de 11 de mayo de 1950 (pág. 905), la delimitación del y la constitución de hipoteca sobre el solar de 314.76 metros cuadrados, que forma parte de la finca mayor de 1120.80 metros cuadrados, constituye una *lotificación*. Veamos.

El artículo 2 de la Ley núm. 213, supra, antes de la enmienda de que fué objeto por virtud de la Ley núm. 388 también arriba citada, definía el término *lotificación* en la siguiente forma:

" 'Lotificación' significa la división o subdivisión de un solar, predio o parcela de terreno en dos o más partes para la venta o para una nueva construcción, e incluye urbanización como hasta ahora se ha usado en la legislación de Puerto Rico."

Bajo el imperio de esta disposición de ley fué que se resolvió por este Tribunal el caso de *Enríquez* v. *Registrador*, 65 D.P.R. 407. En éste dijimos que no es necesario llevar a cabo una segregación e inscribir como finca independiente una parcela que forma parte de otra de mayor cabida para constituir hipoteca sobre dicha parcela, pues basta con la delimitación o deslinde que se haga en la escritura de hipoteca para que sea fácilmente identificada en caso de ejecución. Ello es así toda vez que es solamente en la eventualidad de una ejecución que surgiría la necesidad de dividir la finca.

Al igual qué en el citado caso de *Enríquez* v. *Registrador*, no formándose nueva finca al constituirse por el recurrente la hipoteca de 5 de octubre de 1949 sobre la porción

de 314.76 metros cuadrados que formaba parte de la finca de mayor cabida, y no estando comprendido tampoco el contrato de hipoteca en la definición del término "lotificación", según la legislación vigente en dicha fecha, podía inscribirse dicha hipoteca, como lo hizo el Registrador recurrido.

Pero el estado de la legislación varió, como veremos en seguida, con posterioridad a la inscripción de la mencionada hipoteca. Y como tal inscripción de por sí no formó nueva finca, la porción hipotecada siguió siendo parte de la finca de mayor cabida. En consecuencia, no habiendo adquirido personalidad registral propia, no venía el Registrador obligado, por la inscripción de la hipoteca anterior, a inscribir la hipoteca del 4 de agosto de 1950, en vista de las disposiciones de ley vigentes en esta última fecha. Los casos de *Gerena* v. *El Registrador de Humacao*, supra; *Collazo* v. *El Registrador*, supra; *Bolívar et al.* v. *El Registrador de la Propiedad*, supra, y *Roca* v. *Banco Territorial y Agrícola*, supra, citados por el recurrente, no son de aplicación al de autos.

Veamos, por tanto, la ley vigente el 4 de agosto de 1950. El artículo 2 de la Ley núm. 213 de 12 de mayo de 1942, según quedó enmendado por la núm. 388 de 11 de mayo de 1950, define el concepto *lotificación* así:

" 'Lotificación' significa la división o subdivisión de un solar, predio o parcela de terreno en dos o más partes para la venta, traspaso, cesión, arrendamiento, donación, usufructo, uso, censo, fideicomiso, o para cualquier otra transacción así como para un nuevo edificio e incluye también, urbanización como hasta ahora se ha usado en la legislación de Puerto Rico; y además una mera segregación." [2]

Si bien la *hipoteca*, como puede verse, no se menciona por su nombre en el texto arriba transcrito, no puede haber dudas de que está incluída en la frase "o para cualquier otra transacción", pues este concepto general se aplica, en vista

---

[2] El caso de *Mayagüez Sugar Co.* v. *Registrador*, 40 D.P.R. 82, citado por el recurrente, no es de aplicación al presente, en vista del estado de la legislación actual.

del propósito del estatuto, a todo acto mediante el cual se someta o exponga una finca, predio o parcela a ser dividida materialmente, esto es, a que se formen dos o más partes de lo que antes constituía una sola. Tal es el propósito claro de la ley. De no requerirse la autorización previa de la Junta para formar la nueva porción—tanto en los casos en que el acto o transacción en sí conlleve la formación inmediata de una nueva finca como en los que se deslinda o delimita materialmente sin formación inmediata de finca independiente—la ley resultaría ineficaz para cumplir el fin público que persigue, pues fácil sería recurrir a la ejecución de una hipoteca para obtener a través de ese medio, lo que quizá no podría obtenerse si se intentara de otro modo.

*En vista de lo anterior, debemos concluir que el Registrador recurrido actuó acertadamente al denegar la inscripción de la hipoteca constituída por la escritura núm. 136 de 4 de agosto de 1950, ya que no se acreditó la aprobación previa de la Junta de la lotificación llevada a cabo por la misma.*