ALBERTO H. BIASCOECHEA, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE RÍO PIEDRAS, P. R., recurrido.

Número 1304.
*Sometido:* 1 de febrero de 1954. *Resuelto:* 19 de marzo de 1954.

*Miguel Marcos Contreras,* abogado del recurrente; el Registrador recurrido compareció por escrito; *Rafael R. Fuertes* y *A. Sandín del Manzano,* abogados de la Junta de Planificación, ésta como *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Por escritura pública otorgada en San Juan el 16 de julio de 1953, Alberto H. Biascoechea y su esposa constituyeron hipoteca para garantizar un pagaré al portador y a la presentación por $20,000, con intereses al 7 por ciento anual, sobre un condominio proindiviso de 20,000 metros cuadrados, comprendidos en una parcela de su propiedad compuesta de veintidós cuerdas con setenta y dos céntimos, situada en el Barrio Cangrejos Arriba del término municipal de Carolina. En el hecho décimo tercero de ella se expresa lo siguiente:

"Manifiesta el 'Deudor Hipotecario' [1] que el condominio proindiviso de veinte mil metros cuadrados comprendido en la descrita finca, no tiene determinado sitio fijo en la misma, de suerte que si hubiere necesidad de ejecutar esta hipoteca, el adquirente en subasta sólo adquirirá un condominio indeterminado equivalente a veinte mil metros cuadrados en la descrita finca; sin embargo el 'Deudor Hipotecario' se compromete en tal caso a obtener el correspondiente permiso de la Junta de Planificación

---

[1] En el párrafo undécimo de la escritura se hace constar que el "deudor hipotecario" lo son los esposos Alberto Biascoechea y Concepción Morales.

para segregar dicho condominio si el adquirente en subasta no quisiera permanecer en la comunidad, teniendo dicho adquirente derecho preferente a escoger el sitio donde radicar los veinte mil metros cuadrados siempre que sea en una porción contigua de terreno."

Presentada esa escritura al Registro de la Propiedad de Río Piedras se denegó su inscripción a virtud de la nota que pasamos a copiar a continuación:

"Denegada la inscripción del documento que precede, por entender que de acuerdo con la ley número 213 de 12 de mayo de 1942 según ha quedado enmendada en su artículo 2 por la ley número 388 de 11 de mayo de 1950, la delimitación del y la constitución de hipoteca sobre el condominio de 20,000 metros cuadrados que forma parte de la finca de 22.72 cuerdas constituye una lotificación y no se ha obtenido la autorización correspondiente de la Junta de Planificación de Puerto Rico, tomando en su lugar anotación preventiva por el término legal que marca la ley a favor del tenedor del referido pagaré de su derecho de hipoteca, al folio . . . de Carolina, . . ."

Contra esa nota recurrió ante nos Alberto H. Biascoechea en armonía con lo dispuesto por la Ley de 1 de marzo de 1902, pág. 313. Su única contención es que "el registrador recurrido erró al resolver que de acuerdo con la Ley núm. 213 antes citada la delimitación del y la constitución de hipoteca sobre el condominio de 20,000 metros cuadrados que forma parte de la finca de 22.72 cuerdas constituye una lotificación . . ."

█ █ De conformidad con el artículo 2 de la Ley núm. 213 de 12 de mayo de 1942 (pág. 1107), según quedó enmendado por la núm. 388 de 11 de mayo de 1950, pág. 907:

" 'Lotificación' significa la división o subdivisión de un solar, predio o parcela de terreno en dos o más partes para la venta, traspaso, cesión, arrendamiento, donación, usufructo, uso, censo, fideicomiso, o para cualquier otra transacción así como para un nuevo edificio e incluye también, urbanización como hasta ahora se ha usado en la legislación de Puerto Rico; y además una mera segregación." (Bastardillas nuestras.)

Y según el artículo 24 de la misma ley, tal cual quedó enmendada en la forma ya indicada:

"A partir de la fecha de vigencia de los reglamentos aplicables para lotificaciones según se dispone en el artículo 10 en la presente, no se hará en Puerto Rico ninguna lotificación de terrenos y no se aceptará para registrarlo ningún plano de lotificación de terrenos, ni se levantará ningún edificio, ni se llevará a efecto acto o transacción alguna de las que define el Artículo 2 de esta Ley, ni se expedirá ningún permiso, excepto cuando y hasta donde, se cumplan dichos reglamentos y hayan sido finalmente aprobados de acuerdo con los mismos por la junta. . . ."

Así pues, de tratarse de una lotificación el Registrador habría actuado acertadamente. *Rivera* v. *Registrador*, 64 D.P.R. 461. Empero, según pasaremos a discutir en seguida no hubo tal lotificación.

Todo propietario tiene el derecho de gozar y disponer de las cosas sin más limitaciones que las establecidas por ley. Artículo 280 del Código Civil, edición de 1930. Está autorizado, por ende, para hipotecar los bienes que le pertenecen. Igual facultad concede el artículo 333 del mismo Código a todo condueño. La hipoteca en este último caso se limita, desde luego, a la participación que el condómino tenga en el inmueble; y puesto que el derecho del partícipe es el de una cuota abstracta en la propiedad, no se fija sobre ninguna parte determinada de la misma, sino que recae sobre la totalidad de ella. *Enríquez* v. *Registrador*, 65 D.P.R. 407. Sobre este extremo los tratadistas Galindo y Escosura en sus Comentarios a la Legislación Hipotecaria de España se expresan del siguiente modo a la página 169 del Tomo 3 de su obra:

"Las fincas *pro indiviso*, pueden ser hipotecadas parcialmente por cualquiera de los condueños . . . en este caso, *la hipoteca pesa sólo sobre la parte de la finca que pertenece al hipotecante; pero mientras no se determine, flota sobre toda ella;* y si el inmueble tuviese que enajenarse para realizar el pago, se venderá la parte indivisa, sin perjuicio de que si alguno de los comuneros provocase la división para determinar el lote sobre el que había de pe-

sar la hipoteca, se haga así, interviniendo el hipotecario como interesado. *Lo mismo ha de decirse cuando el dueño de todo el inmueble, en uso de su derecho, hipoteca sólo una porción o parte indeterminada del mismo; . . ."* (Bastardillas nuestras.)

Y el tratadista Morell en el tomo tercero de la segunda edición corregida y adicionada (1928) de sus Comentarios a la Legislación Hipotecaria Española nos dice, refiriéndose a bienes hipotecados por un porcionero, que:

"Al dividirse después la cosa común, la hipoteca queda limitada a la parte determinada que corresponda al deudor en la división. El acreedor, para evitar el perjuicio que al dividir pudiera ocasionársele adjudicando al deudor, con intención o sin ella, la parte peor, tiene, con arreglo al Derecho civil, la facultad de intervenir en el acto de la división y la de oponerse a la que se haya practicado sin su intervención y con fraude."

Véanse los artículos 333 y 336 de nuestro Código Civil, edición de 1930. Por tanto, cuando el "deudor hipotecario" hizo constar en la escritura que si hubiera necesidad de ejecutar la hipoteca, el adquirente en la subasta sólo adquiriría un condominio indeterminado y que el adquirente tendría en tal caso derecho preferente a escoger el sitio donde radicar los 20,000 metros hipotecados, él estuvo enteramente ajustado a derecho. Sin embargo, tales manifestaciones en forma alguna equivalieron a la fijación o determinación de linderos a los 20,000 metros hipotecados.

■■ El Registrador recurrido nos informa en el escrito por él radicado en apoyo de su nota que a su juicio no existe diferencia entre este caso y el de *Martínez* v. *Registrador*, 73 D.P.R. 210; y la Junta de Planificación de Puerto Rico, la que se ha personado en autos como *amicus curiae* con autorización nuestra, "que hipotecar un condominio específico de 20,000 metros cuadrados dentro de una finca de mayor cabida es una lotificación según el alcance del artículo 2," supra, y que "el alcance de inscribir la hipoteca de un condominio de 20,000 metros cuadrados de terreno que forma parte de una finca de mayor cabida, no puede ser otro que el de dar per

sonalidad propia a dicho condominio como finca independiente."

En el caso de *Martínez* v. *Registrador*, supra, el recurrente y su esposa constituyeron hipoteca voluntaria en garantía de un pagaré a la orden del portador, por la suma de $10,000 sobre un solar de 314.76 metros cuadrados, *que se describe en sus cuatro puntos cardinales*, y que formaba parte de otro de mayor cabida. Presentada al registro esa escritura su inscripción fué denegada por considerar el Registrador que el constituir hipoteca sobre una porción de la finca principal, *descrita la misma con cabida y colindancias*, constituía una lotificación, sin que se hubiera obtenido previamente la autorización correspondiente de la Junta de Planificación. Confirmamos la nota recurrida. Luego de referirnos en nuestra opinión al artículo 2 de la Ley 213, supra, según quedó enmendado en 1950, dijimos que dado el texto de ese artículo, no puede haber dudas de que la hipoteca está incluída en la frase "o de cualquier otra transacción" que en él figura. Manifestamos además que "de no requerirse la autorización previa de la Junta para formar la nueva porción—*tanto en los casos en que el acto o transacción en sí conlleve la formación inmediata de una nueva finca como en los que se deslinda o delimita materialmente sin formación inmediata de finca independiente*—la Ley resultaría ineficaz para cumplir el fin público que se persigue, pues fácil sería recurrir a la ejecución de una hipoteca para obtener a través de ese medio lo que quizás no podría obtenerse si se intentara de otro modo." (Bastardillas nuestras.) Nos ratificamos en lo así expuesto. La situación en este caso específico, no obstante, es distinta. En el presente los 20,000 metros gravados con la hipoteca no llevan consigo la formación inmediata de una nueva finca. Tampoco se les ha deslindado o "delimitado" materialmente. Solamente se les ha hipotecado dentro de la finca de mayor cabida de que forman parte, dándosele al acreedor para el caso futuro—incierto e indeterminado, pero posible—de que

se ejecute la hipoteca el derecho preferente a escoger el sitio donde radicar dichos 20,000 metros siempre que sea en porción contigua de terreno, y comprometiéndose los hipotecantes a obtener en tal caso el correspondiente permiso de la Junta de Planificación(²) para la segregación del condominio en cuestión. Conforme indican los tratadistas arriba citados, aunque la hipoteca otorgada en este caso hace mención específica de 20,000 metros cuadrados de terreno y sobre éstos pesa la hipoteca, sin embargo mientras no se determinen esos 20,000 metros el gravamen flota sobre las 22.72 cuerdas. En caso de ejecución el adjudicatario en la pública subasta que se celebre se convertirá en un condueño de la finca, mas tan sólo en una participación de ella equivalente a 20,000 metros de su área total, sin que en forma alguna se haya dispuesto hasta ahora el sitio en particular en que radicarán dichos 20,000 metros ni especificado en manera alguna sus colindancias. En otras palabras, meramente ha habido la constitución de una hipoteca sobre una porción menor e indivisa de una finca mayor, sin una determinación ni fijación de sus linderos. Tal cosa no constituye una lotificación y no constituyéndola no es necesario obtener previamente un permiso de la Junta de Planificación para la inscripción de la hipoteca en el Registro. Según dice Manresa en sus Comentarios al Código Civil Español, tomo III, sexta edición (1934) a la página 479: ". . . el derecho de hipotecar no legitima la hipoteca de parte fija y determinada de un inmueble que el condómino designe a su arbitrio, sino la de aquello que le pueda pertenecer luego que se haga la división, acto que es el verdaderamente declarativo de la propiedad en favor de cada partícipe." Véase además, *Martínez* v. *Mora*, 33 D.P.R. 149.

*Debe revocarse la nota recurrida y efectuarse la inscripción interesada.*

_____

(²) Desde luego, tal promesa de los hipotecantes no obliga a la Junta de Planificación en forma alguna.