Eduardo Fernández Ramírez, recurrente, *v.* El Registrador de la Propiedad de Guayama, recurrido.

Números 1360 y 1361.

*Sometidos:* 3 de abril de 1961. *Resueltos:* 2 de mayo de 1961.

*C. Domínguez Rubio,* abogado del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Don Eduardo Fernández Ramírez[1] presentó en el Registro de la Propiedad copia certificada de la Resolución núm. 16, Serie de 1955–56, de la Asamblea Municipal de Guayama, para que se inscribiera la posesión de un solar a favor de dicho municipio, y un derecho de usufructo sobre el mismo a favor del recurrente. La resolución copiada a la letra lee como sigue:

"RESOLUCIÓN NÚM. 16, SERIE DE 1955–56.

"OFICINA DEL SECRETARIO AUDITOR:

"CONCEDIENDO USUFRUCTO DEL SOLAR MUNICIPAL AL VECINO DON EDUARDO FERNÁNDEZ RAMÍREZ Y PERMISO PARA SU INSCRIPCIÓN EN EL REGISTRO DE LA PROPIEDAD DE GUAYAMA A NOMBRE DE ESTA MUNICIPALIDAD:

"POR CUANTO: —Según resulta de los archivos de este municipio la municipalidad de Guayama, desde tiempo inmemorial viene poseyendo a título de dueño, quieto, pacíficamente y sin interrupción alguna, un solar cuya descripción es la siguiente:

"URBANA: —Solar propiedad del Municipio de Guayama, que mide cuarenta pies por el NORTE, cincuenta y cuatro pies por el SUR, cuarenta y un pies por el ESTE, y sesenta pies por el OESTE y las colindancias son las siguientes: por la derecha entrando, que es el OESTE, con Rodolfo Alonso, antes, hoy Juana Pica; por la izquierda, que es el ESTE, con Juana Alicea, antes, hoy Carmelo Centeno; por la espalda, SUR, con Ernesto Girod

---

[1] Por haber fallecido don Eduardo Fernández Ramírez después de la iniciación de estos recursos, ordenamos en 6 de agosto de 1958 que se le sustituyera por sus herederos don Eduardo Fernández Pérez y doña Josefa Pérez vda. de Fernández.

antes, hoy Francisco Fernández y por el NORTE, con la calle de su radicación o sea la de Baldorioty.

"Por cuanto: —El descrito solar tiene un valor de QUINIEN-TOS SETENTA DÓLARES y lo hubo el Municipio de Guayama, por el legado que le hiciera una señora cuyo nombre se ignora o no se recuerda y cuyo testamento no ha sido posible encontrar a pesar de las búsquedas hechas al efecto y dicho solar, como todos los que integran la comunidad, han sido destinados por el Municipio a concesionarios en usufructo (a) los vecinos de la comunidad para fines de construcción de casas estando en la actualidad en la posesión y disfrute del mismo el vecino don Eduardo Fernández Ramírez, quien es mayor de edad, casado con doña Josefa Pérez y vecino de Guayama, Puerto Rico, quien es el actual dueño de la edificación que data de fecha anterior al 16 de junio de 1954:

"Por cuanto: —Si bien no aparece de los archivos de este Municipio el acuerdo tomado en virtud del cual se otorgó el disfrute de este solar a los usufructuarios originales ni al referido señor don Eduardo Fernández Ramírez, es un hecho comprobado la existencia de la casa en él construida desde hace más de 20 años con la consiguiente segregación del solar referido y la legitimidad del derecho que sobre la misma ostenta el actual usufructuario, el mencionado señor don Eduardo Fernández Ramírez:

"Por cuanto: —Dicho interesado ha acudido a este organismo Legislativo Municipal en solicitud de que se dicte la correspondiente medida concediéndole NUNC PRO TUNC, el usufructo de dicho solar, ratificando así el disfrute en que se halla del mismo y que en consecuencia se le otorgue permiso para su inscripción a nombre del Municipio de Guayama:

"Por cuanto: —El solar descrito se halla libre de toda carga, no aparece inscrito en el Registro de la Propiedad de Guayama y la inscripción del mismo es conveniente a los interesados (sic) de esta Corporación Municipal.

"Por tanto:—Resuélvase por la Hon. Asamblea Municipal de Guayama, Puerto Rico:

"Sección Primera: —Por la presente se acepta y declara que el vecino don Eduardo Fernández Ramírez, de las circunstancias personales expresadas, es dueño actual del inmueble que radica en el descrito solar y se le concede ahora por entonces *nunc pro tunc,* el usufructo del susodicho solar al referido peti-

cionario señor Eduardo Fernández Ramírez, a título gratuito durante todo el tiempo que él o sus cesionarios, o causahabientes mantengan en buenas condiciones la edificación en él existente y se sometan a las demás condiciones aquí establecidas:

"SECCIÓN SEGUNDA: —Es condición expresa de esta concesión que el Municipio de Guayama se reserva el derecho de imponer en adelante, sobre el solar concedido, cualquier tributo, arbitrio o canon que a tal efecto se establezca por ordenanza; quedando en tal caso el concesionario y sus herederos o causahabientes obligado al pago de dicho tributo, arbitrio o canon:

"SECCIÓN TERCERA: —Se autoriza asimismo al concesionario o su cesionario para que gestione la inscripción en el Registro de la Propiedad del Distrito: debiendo hacer dicha inscripción a su costa, sin más obligación por parte del Municipio de Guayama, Puerto Rico:

"SECCIÓN CUARTA: —Esta concesión se hace en virtud de las facultades y autoridad conferídales a esta Asamblea mediante la Ley número 61, aprobada por la Hon. Asamblea Legislativa del Estado Libre Asociado de Puerto Rico en 16 de junio de 1954, enmendatoria de los artículos 70 y 71 de la Ley número 53, aprobada en 28 de abril de 1928:

"SECCIÓN QUINTA: —Se requiere al Secretario-Auditor Municipal para que expida al interesado, previo pago de los derechos correspondientes, testimonio por triplicado de la presente resolución:

"SECCIÓN SEXTA: —La concesión y permiso aquí establecidos se extienden sin perjuicio de tercero de mejor derecho:

"SECCIÓN SÉPTIMA: —Toda ordenanza, resolución, moción o partes de los mismos que se opongan a la presente quedan por ésta derogados."

El 16 de julio de 1957, el Registrador denegó las inscripciones solicitadas porque, a su juicio, el documento "comprende la segregación de un solar con una cabida menor de cinco cuerdas (²) y la ratificación del usufructo de dicho solar

---

(²) Esta referencia a un área menor de 5 cuerdas era innecesaria en el caso de un solar en la zona urbana. Véanse, arts. 3 y 32 del Reglamento de Planificación Núm. 3 (Reglamento de Lotificación, 29 R. & R. P. R. secs. 10–3 y 10–32; *Velázquez* v. *Registrador*, 65 D.P.R. 420 (1945); *Vega* v. *Registrador*, 65 D.P.R. 105 (1945).

(sin que aparezca·la fecha de la concesión original del usufructo) sin que se haya cumplido con el requisito de acreditar la aprobación de la Honorable Junta de Planificación de Puerto Rico a la segregación de referencia." En la misma fecha denegó también la inscripción a favor de la parte recurrente de la posesión de una casa que enclava en el referido solar fundándose en que dicho solar no aparece inscrito, y sí anotado preventivamente a favor del Municipio.

     ■■■■ En los alegatos presentados, y al discutir la situación de hechos que dio margen a las notas denegatorias, tanto la parte recurrente como el Registrador recurrido, parten de la base de que el documento presentado para inscripción envuelve una segregación.(2a) Esta posición asumida por las partes encuentra eco en la parte expositiva de la misma resolución cuando se dice que "es un hecho comprobado la existencia de la casa en él [el solar] construida desde hace más de 20 años *con la consiguiente segregación del solar referido.*" Pero aun cuando la resolución fuera susceptible de ambas interpretaciones, o sea que envuelve o no una segre-

---

(2a) En el alegato del recurrente, al exponer el problema legal envuelto, dice: "En este alegato nos proponemos, *A.*—Demostrar que en el documento que se presentó a inscripción, aparece la fecha de la concesión del usufructo, y de la *segregación* en forma, que el Registrador tiene la obligación de aceptar, *B.*—Que apareciendo tal fecha, es innecesario cumplir con el requisito del permiso de la Junta de Planificación a que hace referencia el Registrador. Aplicar a los hechos en este caso, un reglamento que comenzó a regir el 5 de septiembre de 1944, cuando del texto de la certificación resulta que, el solar referido, la concesión y *la segregación* de éste se llevaron a cabo, hacía más de 20 años." Y nuevamente, al exponer el segundo error ratifica que el Reglamento es inaplicable a "concesiones y *segregaciones* (que) fueron llevadas a cabo y mucho tiempo antes de comenzar a regir la ley . . ." Como expresamos en *Coll* v. *Picó,* ante, págs. 27, 36 (1960), en lo que se refiere a los hechos y a la prueba, el principio es que las alegaciones, admisiones y estipulaciones de ordinario obligan a las partes y al juzgador, no así en cuanto a la interpretación del derecho, que es función particular y exclusiva de los tribunales. Cf. *Freeman* v. *Secretario de Hacienda,* ante, pág. 307, resuelto en 24 de marzo de 1961. Aun cuando esta norma se refiere a transacciones judiciales, no vemos razón alguna por la cual no podamos aplicarla en el presente caso.

gación, evidentes razones de orden público tienen que inclinarnos a adoptar la que considera que nos hallamos frente a la segregación de un solar.

El artículo 24 de la Ley de Planificación de Puerto Rico([3]) dispone que a partir de la vigencia del Reglamento de Lotificación no se hará ni se inscribirá en el Registro de la propiedad ninguna lotificación que no haya sido previamente aprobada por la Junta; y el término "lotificación"([4]) incluye la división o subdivisión de un solar, parcela o predio de terreno para la venta, traspaso, cesión, arrendamiento, donación, *usufructo*, uso, censo, fideicomiso, o para cualquier otra transacción, así como para un nuevo edificio; y además *una mera segregación* (énfasis suplido). Repetidamente hemos resuelto que tal disposición no se aplica a lotificaciones consumadas con anterioridad al día 4 de septiembre de 1944, fecha en que entró en vigor dicho reglamento, *Sepúlveda v. Registrador*, 64 D.P.R. 449 (1945); *Rivera v. Registrador*, 64 D.P.R. 461 (1945); *Matos v. Junta de Planificación*, 66 D.P.R. 439 (1946); *Rodríguez v. Registrador*, 66 D.P.R. 772 (1946), en donde estaba envuelta la venta de un remanente después de efectuadas varias segregaciones antes de la vigencia del Reglamento; *Wilcox v. Registrador*, 67 D.P.R. 475 (1947), que trataba de un solar que aparecía como una unidad independiente en un plano de urbanización aprobado antes de la Ley de Planificación; *Zayas v. Regis-*

---

([3]) Ley Núm. 213 de 12 de mayo de 1942 (Leyes, pág. 1107, 23 L.P.R.A. sec. 25), según ha sido enmendada por las Leyes Núm. 155 de 14 de mayo de 1943, pág. 489; Núm. 388 de 11 de mayo de 1950, pág. 905, y Núm. 434 de 14 de mayo de 1951, pág. 1227.

([4]) Art. 2 de la Ley de Planificación, supra, pág. 1109 (23 L.P.R.A. sec. 2), según ha sido enmendado por las Leyes Núm. 155 de 14 de mayo de 1943, pág. 489, Núm. 475 de 15 de mayo de 1947, pág. 1071 y Núm. 388 de 11 de mayo de 1950, pág. 905. Las enmiendas que ha sufrido este artículo en su definición del término "lotificación" constituyen un reconocimiento al ingenio de la profesión legal. Véanse, *Enríquez v. Registrador*, 65 D.P.R. 407 (1945); *Colón v. Registrador*, per curiam, resuelto en 9 de mayo de 1947; *Martínez v. Registrador*, 73 D.P.R. 210 (1952); cf. *Biascoechea v. Registrador*, 76 D.P.R. 249 (1954).

*trador*, 68 D.P.R. 43 (1948); *Zayas* v. *Junta de Planificación*, 69 D.P.R. 30 (1948); cf. *Ramos* v. *Registrador*, 69 D.P.R. 708 (1949). Ahora bien, después de dicha fecha, cuando el dueño de un solar en donde enclavan edificaciones segrega de la finca principal una de éstas y la vende, el hecho de que con anterioridad a la vigencia del Reglamento existieran las edificaciones, no lo hace inaplicable, y debe obtenerse la aprobación de la Junta. *Fortunet* v. *Registrador*, 67 D.P.R. 265 (1947); *Pérez Mercado* v. *Junta*, per curiam, resuelto en 26 de julio de 1949; cf. *Rivera* v. *Registrador*, supra. En estos casos, aunque la segregación existiera *de hecho* antes del día 4 de septiembre de 1944, si se consuma después de dicha fecha, es necesaria la aprobación de la Junta de Planificación.

En cuanto a estas segregaciones *de hecho* dijimos en *Alicea* v. *Registrador*, 71 D.P.R. 592, 597 (1950) que "si de hecho el solar segregado existía como tal con anterioridad a la vigencia del Reglamento de Lotificación, no es cosa que compete al Registrador determinar en primera instancia y sí a la propia Junta". Claro está, que la facultad de dicho organismo en estos casos no puede ejercitarse arbitrariamente y la dispensa del cumplimiento de los requisitos de plano de construcción o de inscripción, o de la construcción de ciertas facilidades mínimas, debe concederse cuando la prueba establece en forma fehaciente la existencia de la segregación de hecho ocurrida antes de la fecha tantas veces mencionada. *Fuertes* v. *Junta de Planificación*, 76 D.P.R. 644 (1954). Pero el mero hecho de que la segregación existiera antes de septiembre 4 de 1944 no excluye la necesidad de la intervención por la Junta cuando la segregación *se consuma* después de dicha fecha. Al efecto, en cuanto a lotificaciones de hecho y obras de urbanización previamente aceptadas, el Reglamento de Lotificación, Segunda Edición, (23 R. & R. P. R. secs. 10–404 y 10–405) dispone como sigue:

"Artículo 74.—Lotificaciones de hecho.

"En aquellos casos de lotificaciones de hecho en que, de acuerdo con la prueba que le fuere presentada, la Junta concluyese que fueron efectuadas con anterioridad al 4 de septiembre de 1944, la Junta así lo notificará por resolución a la parte interesada, para que pueda procederse a la inscripción de las mismas en el registro de planos de lotificaciones correspondiente.

"Artículo 75.—Obras de Urbanización Previamente Aceptadas.

"Cuando la propuesta lotificación está situada en una calle que haya sido legalmente urbanizada y aceptada como tal por el municipio correspondiente con anterioridad al 4 de septiembre de 1944, no se requerirán nuevas obras de urbanización para dicha calle, a excepción del alumbrado público y de las acometidas necesarias para el suministro de aguas y para la disposición de las aguas negras. Dicha lotificación, sin embargo, vendrá obligada a cumplir con todos los demás requisitos y condiciones establecidas por este subcapítulo."

No hay duda de que *cualquier subdivisión o segregación* para fines de conceder un derecho de usufructo requiere la aprobación de la Junta de Planificación, aun cuando se trate de solares municipales. Claro está, tal aprobación es innecesaria cuando del documento presentado para inscripción surge que el derecho de usufructo se concedió antes del 4 de septiembre de 1944. Sin embargo, no es suficiente que en la resolución u ordenanza aprobada al efecto se haga constar que se ratifica una concesión anterior, si no aparece la fecha en que el usufructo se concedió originalmente. En *Ramos* v. *Registrador*, 69 D.P.R. 708 (1949) confirmamos la actuación del Registrador que se negó a inscribir una copia certificada de una ordenanza de la Asamblea Municipal de Gurabo mediante la cual se ratificaba la concesión del usufructo de un solar, porque no se desprendía del documento la fecha de la cesión original, ya que existía la posibilidad de que la cesión original ocurriera con posterioridad al 4 de septiembre de 1944.

■■ Con el propósito de atemperarse a nuestra opinión en el caso de *Ramos*, la ordenanza municipal que examinamos

concede el usufructo del solar al recurrente "ahora para entonces" (nunc pro tunc), y se hace constar en la parte expositiva que el municipio ha venido poseyéndolo desde tiempo inmemorial, que lo adquirió por legado de una señora cuyo nombre se ignora o no se recuerda, y que la edificación que en el mismo enclava tiene más de veinte años de construída. Deseamos aclarar que, si bien es suficiente a los fines de inscripción de una ordenanza mediante la cual se ratifica la cesión original de un derecho de usufructo la referencia a la fecha de la concesión original, no basta respecto a este último hecho la mera expresión del organismo municipal, sino que es necesario acompañar copia de la ordenanza o resolución de la cesión original. (5) Es esta la única forma en que el Registrador puede asegurarse que no se trata de uno de los casos en que es indispensable obtener la dispensa de la Junta de Planificación. (6) Tampoco puede recurrirse al simple expediente de conceder el usufructo "nunc pro tunc". (7) Conviene aclarar que la referencia a la fecha de la concesión original del usufructo tiene importancia a los únicos fines de determinar si la segregación de hecho existía

(5) Presumimos que la necesidad de ratificar la cesión del usufructo obedece a que el concesionario original es persona distinta del actual usufructuario.

(6) La facultad que reconocemos al Registrador, dentro de su misión de calificación, de examinar el documento de la concesión original del derecho de usufructo, no limita en forma alguna la que tienen los tribunales para resolver, en casos apropiados, si de hecho existió o no una segregación con anterioridad a la vigencia de la Ley de Planificación y sus reglamentos. *Rosado* v. *Registrador*, 71 D.P.R. 553 (1950). En la mayor parte de estos casos—informaciones de dominio—se concede intervención a la Junta. Art. 395 de la Ley Hipotecaria (30 L.P.R.A. sec. 737), según enmendado por la Ley Núm. 71 de 18 de junio de 1957 (Leyes, pág. 176).

(7) Generalmente el término "nunc pro tunc" se usa para describir órdenes y actuaciones *judiciales* que se dictan para corregir errores de forma, omisiones o inadvertencias. *State* v. *Rankin*, 93 N.E.2d 281 (Ohio, 1950); *The Princess Sophia*, 36 F.2d 591 (D. C. D. C., 1929); *In re Jurkowitz' Estate*, 59 A.2d 895 (Pa. 1948); *Collins* v. *Williams et al.*, 36 S.W.2d 93 (Tenn. 1931); *In re Peter's Estate*, 51 P.2d 272, 274 (Okla. 1935). Cf. Regla 49.1 de las de Procedimiento Civil; *Banco Popular de Puerto Rico* v. *Tribunal Superior*, ante, pág. 242 (1961).

antes del 4 de septiembre de 1944, pero que en forma alguna afecta la virtualidad del título. Véase, artículo 70 de la Ley Municipal de 1928 (Ley Núm. 53 de 28 de abril de 1928, pág. 335, según enmendada por la Ley Núm. 61 de 16 de junio de 1954, pág. 335, 21 L.P.R.A. sec. 262). *Rivera* v. *Registrador*, 78 D.P.R. 536 (1955).([7a]) Claro está que en aquellos casos en que el solicitante acompaña con la ordenanza o resolución una copia del acuerdo de la Junta dispensando del cumplimiento del Reglamento por tratarse de una segregación de hecho, la cuestión de la concesión original del derecho de usufructo carece de importancia.

La reciente planificación urbana responde al encomiable propósito de lograr un desarrollo ordenado y científico de las comunidades, un mayor bienestar general y un mejor disfrute de las facilidades mínimas que provee el Estado. Tiende, entre otras cosas, a evitar las concentraciones excesivas de tránsito, el costo excesivo de las mejoras públicas y el surgimiento de arrabales o áreas decadentes. La Junta de Planificación es el organismo que el legislador ha establecido

---

([7a]) La enmienda introducida al artículo 70 citado, de fecha posterior a nuestra opinión en el caso de *Ramos*, no tiene el alcance de dejar sin efecto lo allí resuelto, pues éste se limita a requerir la fecha de la concesión original del derecho de usufructo a los *únicos* fines de determinar si la segregación existía de hecho antes del día 4 de septiembre de 1944, ya que las concesiones de usufructo de solares hechas por un municipio con *anterioridad* a la vigencia del Reglamento de Lotificación son inscribibles no obstante el hecho de no haberse cumplido con los requisitos de tal Reglamento. El propósito claro de esta enmienda al efecto de que "En el caso de cualquier persona que antes de la aprobación de esta ley haya edificado o adquirido una edificación en un solar propiedad del municipio sin haber constancia de habérsele concedido anteriormente un usufructo sobre dicho solar de acuerdo con esta ley, la asamblea municipal podrá discrecionalmente y a petición del dueño de la edificación, concederle el usufructo del solar a perpetuidad, ajustándose siempre a las disposiciones pertinentes de esta ley relacionadas con la concesión de solares en usufructo" es evitar que el mero hecho de que no exista la constancia de la concesión del usufructo con anterioridad al 16 de junio de 1954 impida que la asamblea municipal conceda posteriormente el usufructo. Advertimos, de paso, que esta disposición no se incorporó en la Ley Municipal de 1960 (Ley Núm. 142 de 21 de julio de 1960, 21 L.P.R.A. secs. 1101 y sigtes.), en vigor desde el día 9 de junio de 1961.

para poner en vigor esa sana política pública. De ahí, que hayamos decretado la nulidad, aun entre las partes, de una escritura de compraventa de un solar segregado otorgada sin que se obtuviera la previa autorización de la Junta, *Soto* v. *Feliciano,* 80 D.P.R. 615 (1958).

Aun cuando la resolución de la Asamblea Municipal de Guayama cumple sustancialmente con los requisitos exigidos por la ley para la inscripción de bienes de los municipios, ([8]) no obstante era necesaria la aprobación o dispensa de la Junta de Planificación. Aun cuando no se tratara de una segregación de hecho existente desde antes del 4 de septiembre de 1944, las normas que la Junta ha adoptado para las cesiones de derechos de usufructo de solares municipales son sumamente liberales. ([9])

*Por las razones expuestas, las notas recurridas serán confirmadas.*

Opinión disidente emitida por el Juez Asociado señor Santana Becerra.

A mi entender, éste no es en su origen un caso de lotificación. Veamos:

Por la Ley 61 de 16 de junio de 1954, —21 L.P.R.A. Sup. Acum. 1959, sec. 262—, se adicionó al artículo 70 de la Ley Municipal de 1928 una disposición al efecto de que en el caso de cualquier persona que antes de la aprobación de esa ley hubiera edificado o adquirido una edificación en un

---

([8]) Art. 36 del Reglamento Hipotecario (30 L.P.R.A. sec. 866), según ha sido enmendado por la Ley Núm. 5 de 16 de febrero de 1955 (Leyes, pág. 23); *Antomattei* v. *Registrador,* 40 D.P.R. 899 (1930); *Municipio de Caguas* v. *Registrador,* 40 D.P.R. 208 (1929); *Ramírez* v. *Registrador,* 77 D.P.R. 750 (1954).

([9]) Por resolución de 24 de julio de 1957, la Junta acordó aprobar las cesiones en usufructo y ventas de solares municipales con frentes mínimos de 5.5 metros y fondos de 15 metros, siempre que estén ocupados por edificaciones, y sus frentes y áreas no puedan aumentarse por la existencia de condiciones especiales que lo impidan. Observamos que, en cuanto a tal medidas lineales, el solar a que se refieren estos recursos cumple con los requisitos exigidos por la Junta.

solar propiedad del municipio sin haber constancia de habérsele concedido anteriormente un usufructo sobre dicho solar, la asamblea municipal podrá discrecionalmente y a petición del dueño de la edificación concederle el usufructo del solar a perpetuidad. A virtud de dicha disposición, la Asamblea Municipal de Guayama aprobó el 28 de noviembre de 1955 la Resolución Núm. 16 concediendo usufructo de solar municipal al peticionario y permiso para su inscripción en el Registro de la Propiedad de Guayama a nombre de esa Municipalidad, Resolución que se transcribe íntegramente en la opinión del Tribunal.

Presentada la misma al Registro, el Registrador hizo la siguiente anotación:

"Denegada la inscripción de este documento por el fundamento de que el mismo comprende la segregación de un solar con una cabida menor de cinco cuerdas y la ratificación del usufructo de dicho solar (sin que aparezca la fecha de la concesión original del usufructo) sin que se haya cumplido con el requisito de acreditar la aprobación de la Honorable Junta de Planificación de Puerto Rico a la segregación de referencia; careciendo el Registrador que suscribe de facultades discrecionales para eximir a los interesados en el título o documento de que se trata del cumplimiento de obligaciones impuestas por las leyes o las reglamentarias con fuerza de ley como lo es el Reglamento de Planificación número tres de dicha Junta de Planificación; todo ello conforme a lo resuelto en 69 D.P.R. 708 *Ramos* v. *Registrador* y la doctrina sentada en los subsiguientes casos 71 D.P.R. 592–597 *Alicea* v. *Registrador;* 72 D.P.R. 888–890 *Mari* v. *Registrador;* 74 D.P.R. 789–800–801 *Nido* v. *Registrador* y 75 D.P.R. 142–154 *Seashore Realty* v. *Junta* y también de acuerdo con la doctrina establecida en el caso 67 D.P.R. 265 *Fortunat* v. *Registrador* \* y 66 D.P.R. 774 *Rodríguez* v. *Registrador* (En reconsideración) al folio" . . . etc.

Expone la Asamblea en su Resolución que desde tiempo inmemorial el Municipio venía poseyendo a título de dueño, quieta, pacíficamente y sin interrupción alguna, *un solar* que

---

\* Así aparece.

describe midiendo 40 pies por el norte que es la calle Baldorioty donde radica, 54 pies por el sur colindando con Francisco Fernández, 41 pies por el este con Carmelo Centeno y 60 pies por el oeste con Juana Pica; y que el *"descrito solar"* lo hubo el Municipio por el legado que le hiciera una señora cuyo nombre se ignora o no se recuerda y cuyo testamento no ha sido posible encontrar a pesar de la búsqueda al efecto.

Conjuntamente con la referida Resolución Núm. 16, se presentó al Registro otra Resolución de la Sala de Guayama del Tribunal Superior de 13 de abril de 1956 dictada en un expediente de Información Posesoria en la que se describe el mismo solar y se hace constar que tiene una extensión de 267 metros cuadrados; que por escritura núm. 90 de 4 de diciembre de 1946 el allí y aquí peticionario Eduardo Fernández Ramírez adquirió por compra una casa sita en ese solar la cual poseía a título de dueño quieta y pacíficamente desde la fecha en que la adquirió, y ordenó el tribunal al Registrador que procediera a inscribir a nombre de Fernández la posesión de la referida casa en y sobre el solar de referencia. Se hizo constar también en esta Resolución que los colindantes nada opusieron al informativo, y que el apoderado de la colindante Juana Ortiz Vda. de Pica manifestó que nada tenía que oponer "por constarle que tanto el solar de la finca de su poderdante como en la que ahora nos referimos, pertenecen al Municipio de Guayama, y entre una y otra finca, existe una empalizada que las separa desde hace muchos años." Dice la Resolución del tribunal que la Junta de Planificación a la cual se le había enviado copia de la solicitud había dictaminado en el sentido de que la intervención de ésta era innecesaria en ese informativo.

En su alegato el Registrador nos dice que ampara la acción tomada con particularidad en los casos de *Ramos* v. *Registrador*, 69 D.P.R. 708 y *Alicea* v. *Registrador*, 71 D.P.R. 592, y que el caso de *Ramos* "es el caso principal en que se sostiene la nota denegatoria." Los hechos que tuvieron ante sí aquellos Registradores que dieron lugar a lo en esos casos

decidido por nosotros difieren, a mi juicio de manera fundamental, de los hechos en el presente caso. En el de *Ramos*, la Ordenanza aprobada en 24 de octubre de 1944 ratificando la concesión de usufructo de un solar hizo constar expresamente lo siguiente:

"POR CUANTO: El referido solar mide 10.40 mts. de frente, por 9.40 de fondo, equivalentes a 97.76 metros cuadrados y colinda por el Norte, con Calle Gregorio Rivera; por el Sud, con Casa Gumersinda Ramos; por el Este, con Calle Matías González y por el Oeste con Casa Juan Ramos; *y que dicho solar forma parte de una finca compuesta de veintiséis cuerdas, equivalentes a diez hectáreas, veintiuna áreas y noventa centiáreas, destinadas al fomento de la población del pueblo de Gurabo; en lindes* [se describen] *sobre el cual enclava el pueblo de Gurabo, y se haya inscrito en el Registro de la Propiedad de Caguas, al Folio 245, Tomo 5 de Gurabo, finca 716, inscripción primera,* adquirida por título de compra a Don Marco Donis, en fecha 11 de marzo de 1815;" (Énfasis adicionado.)

Y en la parte dispositiva dijo:

"Que por la presente ratifique a favor de Gumersinda Ramos la concesión de usufructo del solar que se refiere esta Ordenanza, para que lo usufructúe por el término de 20 años siempre que mantenga en dicho solar el edificio que actualmente existe, en buenas condiciones de ornato y sanidad y sujeto dicha concesión en cuanto a su extinción a las causas y mediante las formas determinadas en la vigente Ley Municipal dándose facultades a dicho CEDENTE *para hacer constar este derecho en el Registro de la Propiedad, a favor de este Municipio, como una nueva finca y bajo el número que le corresponda* y al efecto de graduar los honorarios que dicha inscripción devengue se le asigna a dicho solar la cantidad de cincuenta dólares;" (Énfasis adicionado.)

Es claro que de la Ordenanza de Gurabo surgía un caso de lotificación, cosa innegable. *Ramos* presentaba el problema de cuándo pudo haber sido hecha tal división ya que la ordenanza ratificando el usufructo se aprobó con posterioridad al 5 de septiembre de 1944, —fecha en que empezó a regir el Reglamento de Lotificación, —y la misma no decía

la fecha en que el usufructo sobre el solar segregado había sido originalmente concedido, a lo cual expresamos que el hecho de que hubiera una ratificación no significaba necesariamente que la concesión original se hiciera antes del 5 de septiembre de 1944. Nos negamos a darle efecto a una expresión contenida, no en el cuerpo de la Ordenanza, sino en una declaración jurada del alcalde que se acompañó, en el sentido de que la Ramos venía usufructuando el solar desde el año 1938.

En el caso de *Alicea*, la Capital aprobó una Ordenanza en 9 de febrero de 1944 de tipo general para afrontar, según se dice en la opinión, la situación creádale por una barriada que fue creciendo hasta cubrir toda el área de la finca principal, sin planes previos de desarrollo urbano. La Ordenanza autorizaba al Administrador de la Capital a ceder en arrendamiento o en venta, mediante subasta pública, todos y cada uno de los solares propiedad de la Capital radicados en las barriadas de Shanghai y San Ciprián, y manifestaba que las parcelas o solares referidos aparecían descritos y enumerados en una relación de los mismos que estaba en poder del Secretario y del Auditor de la Capital. De acuerdo con la autoridad así concedida, en 1ro. de noviembre de 1944 el Administrador de la Capital otorgó escritura pública titulada "Ejecución de Subasta y Cesión y Traspaso de Solar" a favor de Alicea exponiendo dicha escritura que la Capital era dueña en pleno dominio *de una finca de 64,313.60 metros cuadrados* que se describía y que la misma aparecía inscrita en el Registro de la Propiedad; que el Administrador procedió a la subasta de unos solares *según plano levantado por el ingeniero municipal Juan José Otero el 6 de octubre de 1944* (obsérvese que este plano fue posterior al 5 de septiembre de 1944, fecha en que entró en vigor el Reglamento de Lotificación), y que habiendo Alicea hecho una proposición que fue aceptada, se le cedió un solar en la mencionada finca de 134.10 metros cuadrados por la suma de $1.00.

Al igual que en el caso de Gurabo, es claro que el documento que se presentó al Registrador en este caso contenía una lotificación. El caso de *Alicea* revela algo más. El propio interesado a quien se le denegó la inscripción había sometido a la Junta de Planificación una Declaración de Intención de Lotificación en cuanto a aquel solar, la cual fue rechazada por la Junta por entender, y fuimos de igual opinión, que era al Gobierno de la Capital a quien correspondía someter tal solicitud. Tanto en el caso de *Ramos* como en el de *Alicea* se hace referencia al de *Rivera* v. *Registrador*, 64 D.P.R. 461. Aquí se trataba de una escritura, de la cual aparecía meridianamente claro un caso de lotificación. De un solar de 231 metros cuadrados en donde existían dos edificaciones se separaron 121 metros con una de las edificaciones. Ello ocurrió en 22 de septiembre de 1944, con posterioridad a la vigencia del Reglamento. Sosteniendo la nota denegatoria por falta del plano de lotificación, sostuvimos, entre otras cosas, que el hecho de que hubiera una casa edificada no era óbice para que se exigiera dicho plano habiéndose hecho la separación después del Reglamento, porque aun así la Junta podría corregir cualquier deficiencia en cuanto a los requisitos exigibles. Cf: *Fortunet* v. *Junta de Planificación*, 67 D.P.R. 265.

*Rodríguez* v. *Registrador*, (en reconsideración) citado en la nota, 66 D.P.R. 774, envuelve un caso tan claro de división de un predio por escritura que no hace falta exponer sus hechos en detalle. *Mari* v. *Registrador*, 72 D.P.R. 888 también citado, envolvía un solar inscrito de 300 metros cuadrados que se quiso reinscribir mediante certificación de mensura con solo 189.77 metros, sin que la mensura expusiera que hubo un error en la cabida original. Dijimos que lógicamente podía inferirse una segregación de los 110.23 metros restantes.

Compárense las situaciones. El Municipio de Guayama expresa en la propia Resolución que desde tiempo inmemorial posee a título de dueño sin interrupción alguna, el solar que

describe por sus cuatro puntos cardinales en medidas exactas que dan un área específica, 267 metros cuadrados según expresé, y que el *"descrito solar"*, en esas medidas y con esa capacidad, lo hubo en virtud de legado testamentario. También, que *"dicho solar"*, como los demás de la comunidad destinados a concesionarios en usufructo para construcción de casas, estaba en la actualidad en la posesión y disfrute del peticionario quien era dueño de la edificación construida sobre el mismo. Expone la propia Resolución, (no una persona ajena a la Asamblea como en el caso de *Ramos*), el hecho comprobado de la existencia de dicha casa desde hacía más de veinte años con la consiguiente segregación del solar referido y la legitimidad del derecho que sobre la misma ostentaba el actual usufructuario.

No puedo convencerme que esta Resolución presentara al Registrador un caso de lotificación. El artículo 2 de la Ley de Planificación y Presupuesto de Puerto Rico—23 L.P.R.A. sec. 2—define lotificación como la *división o subdivisión* de un solar, predio o parcela en dos o más partes para la venta, cesión . . . *usufructo*, uso . . . o para cualquier otra transacción . . . . . ; y además una mera segregación. Sea para uno de los fines mencionados entre los cuales está el usufructo, o sea sin propósito específico alguno, la lotificación exige la división o subdivisión de un predio en dos o más partes. Véanse: *Martínez* v. *Registrador*, 73 D.P.R. 210; *Biascoechea* v. *Registrador*, 76 D.P.R. 249.

Es cierto que al hablar sobre el hecho comprobado de la existencia de la casa "en él" construida desde hacía más de 20 años se añade: "con la consiguiente segregación del solar referido." Pero si el Municipio adquirió el solar en la misma extensión superficial y medidas por sus puntos cardinales en que estaba concediendo el usufructo, y no en una extensión mayor, tomada la frase a la luz de todo el contexto de la Resolución sin aislarla del resto de la misma, —aparte de que no dice que se efectuó una segregación—, ello fue una manera de expresar que había una casa construida en un solar

segregado o deslindado en sí, como un cuerpo unitario. Lo que dijera un colindante en el informativo posesorio, asumiendo que se considerara como dicho por la Asamblea Municipal, tampoco indica que se hiciera una segregación. Indica más bien lo contrario. Significativamente, en su cuidadosa argumentación el Registrador en momento alguno menciona esa frase en apoyo de su posición.

Al calificar el documento el Registrador no podía poner en duda la manifestación del Municipio en cuanto a cómo hubo el solar y su cabida. Cf: *Nido & Cía.* v. *Registrador,* 74 D.P.R. 789; *Noguera* v. *Registrador,* 72 D.P.R. 195. No parece que lo pusiera en duda, ya que en su nota no levantó reparo alguno en cuanto a no haberse presentado el testamento o cualquier otro documento complementario que acreditara el hecho.

De lo cual deduzco, ante la sustancial diferencia en las ordenanzas, que el Registrador interpretó el caso de *Ramos* y los demás mencionados en el sentido de que en todos los casos la concesión del usufructo de solar por un Municipio comprende, *ipso jure,* una lotificación.([1]) De ser así, habría que concluir que hay lotificación a tenor del artículo 2 de la Ley de Planificación dondequiera que se separe el dominio pleno de un cuerpo entre nuda propiedad y dominio útil, sin que el cuerpo se divida o subdivida.

No presentando a mi entender la Resolución aquí envuelta en su origen un caso de lotificación, no es necesario que discuta la doctrina en cuanto a lotificaciones *de facto* antes de la vigencia del reglamento, a la cual nada tengo que oponer, y opino que las notas del Registrador recurridas deberían revocarse.

---

([1]) Es posible que con mayor frecuencia la comprenda como cuestión *de hecho,* si se tiene en cuenta que de ordinario los solares que se dan en usufructo son parcelaciones o deslindes, para fines del uso particular, de los ejidos o de la propiedad común pública de mayor extensión. Este, no es el caso ordinario.