RAÚL MATOS BALAGUER, demandante y recurrido, *v.* JULIO CÉSAR PÉREZ, en su carácter de SECRETARIO DE HACIENDA, demandado y recurrente.

Número: R-78-387 Resuelto: 27 de junio de 1979

*Héctor A. Colón Cruz, Procurador General,* y *Federico Cedó Alzamora, Procurador General Auxiliar,* abogados del recurrente; *Raúl Matos Balaguer,* por su propio derecho.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió ·la opinión .del Tribunal.

Raúl Matos Balaguer y su esposa Carmen A. Alvarado, en unión a los matrimonios Montalvo-Toro y Pérez-Pérez eran dueños, por partes iguales, de una finca rústica de 192.4 cuerdas en el Barrio Magueyes, Ponce. Interesados en vender una pequeña porción, y con el propósito de superar las limitaciones impuestas en los reglamentos de lotificación de la Junta de Planificación de Puerto Rico proscribiendo entonces en la zona rural la segregación de parcelas de menos de cinco (5) cuerdas ([1])—mediante la escritura pública Núm. 22 otorgada el 31 de mayo de 1972 ante el Notario Leopoldo J. Cabassa Saurí—efectuaron los siguientes actos: (a) segregaron una parcela de 5.2924 cuerdas; (b) la vendieron por la suma total de $66,093.60, en dos condominios indivisos;

---

([1]) Reglamento de Planificación Núm. 3 (Lotificación) 23 R.&R.P.R., Secs. 10–3 y 10–32, y el Reglamento para Lotificaciones Simples, 23 R.&R.P.R., Sec. 10–504. Fue enmendado en 31 de octubre de 1974 para sujetar el requisito a parcelas de menos de 25 cuerdas.

El mecanismo para disponer de la parcela en condominios indivisos menores de 5 cuerdas antes de 1974, sin dispensa previa de segregación por parte de la Junta de Planificación, se viabiliza en virtud de nuestro pronunciamiento en *Biascoechea* v. *Registrador,* 76 D.P.R. 249 (1954). Allí decidimos que no existe una lotificación cuando la hipoteca, como en el caso de autos, se circunscribe a la participación que el condómino tenga en el inmueble. Debido a que su derecho se proyecta sobre una cuota abstracta de la propiedad, no se fija sobre ninguna parte determinada de la misma, sino sobre la totalidad de la finca. La hipoteca grava la parte de la finca que pertenece al hipotecante, pero mientras no se determine, flota sobre toda. Cuando no hay fijación o determinación de linderos de la parte hipotecada, no hay lotificación. Incorporamos el pensamiento de Manresa, en el sentido de que ". . . el derecho de hipoteca no legitima la hipoteca de parte fija y determinada de un inmueble que el condómino designe a su arbitrio, sino la de aquello que le pueda pertenecer luego que se haga la división, acto que es el verdaderamente declarativo de la propiedad en favor de cada partícipe." Claro está, que si se fijan los linderos en la parte hipotecada, entonces existe una lotificación y se impone otro enfoque y solución.

(c) uno de ellos, equivalente a tres (3) cuerdas, fue vendido por $37,465.20 de contado al Centro Español de Ponce, Inc., libre de cargas, reservas o menciones de cualquier naturaleza; el otro condominio, equivalente a 2.2924 cuerdas fue vendido a cuatro matrimonios [2] por el precio total aplazado de $28,628.40 a pagarse en cuatro (4) años garantizado con una hipoteca voluntaria.

Estimándose acreedor a ello, Matos Balaguer se acogió al alivio contributivo sobre ventas aplazadas provisto en la Sec. 44(b) de la Ley de Contribuciones sobre Ingresos de 1954, según enmendada, con respecto al producto de la venta del condominio indiviso de 2.2924 cuerdas. 13 L.P.R.A., 3044(b). Oportunamente informó al Departamento de Hacienda y declaró cada uno de los plazos recibidos en cuanto a dicho condominio, que correspondían a los años 1973, 1974, 1975 y 1976. El Secretario de Hacienda rechazó tal contención por el fundamento de que la transacción realizada constituía una sola compraventa, por lo que la parte del precio recibida durante el primer año por la totalidad de la parcela excedía el treinta por ciento (30%) del precio total, y en su consecuencia excluía la transacción de los beneficios de la Sec. 44(b). En vista de ello le notificó de una deficiencia en su declaración de ingresos para el año 1972 ascendente a $3,795.38. En vista administrativa reiteró dicha posición aunque reconoció un crédito de $752.60 por concepto de reintegro. (Caso V.A. #77-374.) La deficiencia se redujo a $3,042.78.

Impugnada judicialmente dicha deficiencia, recayó sentencia sumaria a favor del contribuyente Matos Balaguer, al estimar el foro de instancia que los ingresos en controversia fueron el producto de "dos ventas completamente desvinculadas la una de la otra." A petición del Secretario de Hacienda accedimos a revisar.

---

[2] José Miguel López Cintrón y Francisca Maldonado Cotti; Julio Lugo Cordero y Consuelo Figueroa Jusino; José Antonio Santiago Nazario y Margarita Rivera Rosado; y Ramón Emilio Toro Serrano y Rosa Julia Martínez Riveiro.

# I

En *Amadeo Gely* v. *Srio. de Hacienda,* 99 D.P.R. 150 (1970), se trataba de la venta de una finca con casa en ella enclavada. Se hizo constar en la escritura el precio de la finca y el de la casa separadamente. Se expresó que el precio de la casa se pagaba de contado por lo que no se tomó en consideración en el precio de la finca a los fines del pago inicial máximo de treinta por ciento (30%) que permite la ley. Allí concluimos que se trataba de una transacción unitaria que comprendía todos los bienes que formaban la finca, principal y accesorios, y por ende no podía invocarse la Sec. 44(b) de la Ley de Contribuciones sobre Ingresos de 1954, que en lo pertinente dispone:

"Ventas a plazos. . . .

(b) Ventas Casuales de Bienes Muebles y Ventas de Bienes Inmuebles.—En el caso . . . *de una venta u otra disposición de bienes inmuebles, si en cualquiera de dichos casos los pagos iniciales, si algunos, no excedieren del 30 por ciento del precio de venta, el ingreso podrá, bajo reglamentos prescritos por el Secretario, ser declarados sobre la base y en la forma antes prescrita en esta sección. . . .* Según se emplea en esta sección el término 'pagos iniciales' significa los pagos recibidos en efectivo o en bienes, que no sean evidencias de deudas del comprador, durante el período contributivo en que la venta u otra disposición es efectuada." \13 L.P.R.A. sec. 3044(b). (Énfasis nuestro.)

 El texto transcrito establece la regla para declarar los beneficios en ventas a plazos que permite prorratear las ganancias en ventas a plazos por los cuatro años contributivos siguientes a medida que se van recibiendo los pagos de los plazos. De cada plazo recibido se declara en cada año aquella proporción de la ganancia total que el monto de los plazos recibidos durante el año guarde con el precio total del contrato. Meléndez Carrucini, *Manual de Ganancias y Pérdidas de Capital,* Tomo I, pág. 418 (1962). Bajo sus términos, para cualificar, no es necesario que durante el año en que se realiza la venta haya *pago inicial,* sin embargo de recibirse

alguno durante ese período, éste no puede exceder del treinta por ciento (30%) del precio de venta.[3] Aclaramos sin embargo, que esta disposición "constituye una excepción a la regla general de declarar en el año contributivo todo ingreso." Koury, *Installment Sales of Real Estates Under the Internal Revenue Code*, (Comments), Miss. L. J., Vol. 4, pág. 425 (1973).

Respecto al aspecto relativo a si se trata o no de una sola venta—salvo el caso de *Amadeo Gely*, en que claramente había una sola transacción—la cuestión no ha sido resuelta. Sin embargo, en la jurisdicción federal existen pronunciamientos que nos orientan. Sobre el particular Mertens informa:

"El hecho de que el estatuto está concebido en términos de una venta y no de una transacción debe ser considerado cuando están envueltas *dos parcelas inmuebles. Claramente, cuando se usan documentos separados,* la contabilidad bajo la sección 453 [equivalente a la 44 nuestra] debe hacerse también separadamente, en ausencia de una razón poderosa para tratarlas como una sola venta." *Law of Federal Income Tax*, Vol. 2, Cum. Supp. (1978). (Traducción y énfasis nuestro.)

Lógicamente, y a *contrario sensu*, cuando en una sola escritura se realizan varias transacciones exclusivamente sobre un bien inmueble existe una fuerte inferencia de que para fines contributivos se trata de una venta. Koury, *op. cit.*, págs. 435–436. "Cuando unas propiedades diferentes van a ser vendidas en una transacción integrada que envuelve plazos, es posible resolver el asunto de manera tal que sean dos o más ventas segregadas, algunas cualificando para ser declaradas a plazos y otras no. Esto es importante, por ejemplo, cuando los pagos por ventas anuales excederán el treinta por ciento (30%) de todo precio de venta." Michie's *Federal Tax Handbook*, Vol. 2, pág. 1504 (1977). La determinación de si una transacción constituye una o más ventas es básicamente una cuestión de hecho. Véanse, *Farha* v. *Commis-*

[3] C. Morales, *Alivios Contributivos que Ofrece la Ley de Contribuciones Sobre Ingresos de 1954*, Rev. Jur. U.P.R., Vol. 24, pág. 30 (1954).

*sioners*, 416 F.2d 93 (1969); *certiorari* denegado, 397 U.S. 1029 (1970); *Charles A. Collins*, 48.5 P-H TC (1967); *Richard H. Pritchett*, 63.14 P-H TC (1974).

## II

Teniendo presente estas mínimas consideraciones, analicemos la escritura ante nos, recordando que aun cuando el instrumento desde el punto de vista notarial o registral sea una pieza perfecta en redacción, pueda ser "una trampa contributiva." C. Morales, *op. cit.*, pág. 24.

■ Al igual que otros aspectos comprendidos en la Ley de Contribuciones sobre Ingresos, la determinación administrativa y judicial sobre los efectos contributivos de una enajenación o disposición de un bien inmueble en particular—al amparo de la Sec. 44(b) antes citada—no se rige exclusivamente por los preceptos netamente civilistas que informan la institución en cuestión bajo el Código Civil. *Daubón Belaval* v. *Srio. de Hacienda*, 106 D.P.R. 400 (1977). Enfatizamos que "[n]uestra ley de contribuciones sobre ingresos se funda en hechos y no [en] ficción [, y que una] transacción se analiza por sus realidades pragmáticas." Véase, *Blackstone Realty Company* v. *C.I.R.*, 398 F.2d 991, 996 (1968).

■ Entre los factores a ser ponderados en la dimensión contributiva para detectar si se trata de una o varias ventas, estimamos pertinentes: (a) la naturaleza del objeto enajenado, si el bien o bienes inmuebles poseen características propias dentro o fuera del Registro de la Propiedad definitorios de sus límites superficiales; (b) la identidad y vinculación de los vendedores y compradores; (c) si la transacción se plasma en uno o más instrumentos notariales; y (d) la intención que aflora del análisis integral del negocio a la luz del lenguaje utilizado en el documento.

La tesis central del Secretario de Hacienda de que se realizó una sola venta se funda en la lectura de la escritura conteniendo lenguaje que sugiere que se enajenó la totalidad

de la finca de 5.2924 cuerdas. A tal efecto, destaca las siguientes expresiones: "que habiendo convenido las partes comparecientes en una operación de compraventa" (pág. 6); "se efectúa esta compraventa por el convenido precio de Sesenta y Seis Mil Noventa y Tres Dólares con Sesenta Centavos ($66,093.60). . . ." (pág. 8); se hace referencia a la forma del pago especificándose que se pagaron $37,465.20 en 3 cheques por el adquirente del condominio equivalente a 3 cuerdas y "el remanente de Veintiocho Mil Seiscientos Veintiocho dólares con Cuarenta Centavos ($28,628.40) se comprometen y obligan a satisfacerlo . . . los compradores del condominio indiviso de 2.2924 cuerdas en el término de 4 años"; y "la hipoteca es el precio aplazado de la venta." (Pág. 11.)

Compartimos dicho razonamiento. En unidad de acto los vendedores segregaron y dieron vida, registral y extra-registral a un bien inmueble de 5.2924 cuerdas. Simultáneamente lo enajenaron a pluralidad de compradores, creándose, por ministerio de ley, una comunidad compuesta por dos condominios equivalentes a 3 y 2.2924 cuerdas respectivamente. La venta se concibió y se plasmó en una sola escritura notarial, utilizándose lenguaje que sugiere y sostiene esta conclusión para fines contributivos. El que se realizara así para salvar las limitaciones reglamentarias sobre segregación, no desvirtúa el hecho de que jurídicamente la venta versó sobre la totalidad de la finca. No se dispuso de dos bienes inmuebles, sino de uno solo. El elemento fáctico determinante no es la ficción de ley, resultante de la creación de dos condominios en abstracto, sino la realidad pragmática incontrovertida de que se dispuso y vendió una sola finca, de 5.2924 cuerdas. A través del prisma del derecho contributivo resolvemos que los vendedores enajenaron la totalidad de la finca segregada, y no dos propiedades diferentes.

Finalmente, no podemos convenir con la proposición de que el otorgamiento de escrituras distintas y separadas hubiese demostrado la existencia de dos ventas. No albergamos

duda de que la integridad y simultaneidad de la transacción constituyó una parte esencial del negocio. Los vendedores y compradores estaban conscientes de que la venta era de la totalidad de la finca; especialmente para estos últimos era de extrema importancia conocer con certeza quienes habrían de componer la comunidad. El análisis integral de la operación es lo determinante.

Aun cuando el contribuyente Matos Balaguer actuó *bona fide,* la venta realizada está excluida de los beneficios que ofrece la Sec. 44(b) de la Ley de Contribuciones sobre Ingresos. *En su consecuencia se dictará sentencia revocando la del Tribunal Superior, Sala de Ponce y en su lugar se desestimará la demanda.*

El Juez Asociado Señor Rigau disintió sin opinión. El Juez Asociado Señor Martín concurre en el resultado. El Juez Asociado Señor Díaz Cruz no intervino.